[No. 15966. Department One. January 5, 1921.]

J. I. C. CONNER, *as Trustee etc., Appellant*, v. FIRST
NATIONAL BANK OF SEDRO-WOOLLEY, *Respondent*.[1]

BANKRUPTCY (6)—FRAUDULENT PREFERENCES—CHANGE IN EVIDENCE
OF INDEBTEDNESS. A bank is not liable for obtaining an unlawful
preference from an insolvent depositor where it merely cancelled
the depositor's indebtedness to it by the cancellation of an equal
amount of the deposits, or merely changed the form of the indebt-
edness from a note to an overdraft.

BANKS AND BANKING (22)—DEPOSITS—APPLICATION TO DEBTS OR
SET-OFF BY BANK. A bank may exercise its right of set-off by apply-
ing deposits to the payment of a debt due from the depositor, in the
absence of express agreement to the contrary.

Appeal from a judgment of the superior court for
Skagit county, Brawley, J., entered March 23, 1920,
in favor of the defendant, in an action to recover a
fraudulent preference by an insolvent, after a trial to
the court. Affirmed.

*Lester Whitmore* and *Will J. Griswold*, for appel-
lant.

*Coleman & Gable*, for respondent.

PARKER, J.—The plaintiff, as trustee in bankruptcy
of the Nooksack Lumber Company, seeks recovery
from the defendant bank, proceeding upon the theory
that it wrongfully obtained preference payments as a
creditor of the lumber company while that company
was insolvent. A trial upon the merits by the court
sitting without a jury resulted in judgment denying
to the plaintiff any recovery. He has appealed there-
from to this court.

The controlling facts, as we view them, are not in
dispute. Indeed, we gather them almost wholly from

[1]Reported in 194 Pac. 562.

the statement of them made by appellant's own counsel. They may be summarized as follows: In April, 1918, the bank and lumber company entered into a tentative agreement by the terms of which the bank was to loan to the lumber company from time to time as might be required in its business, sums aggregating not to exceed $3,000. At that time and thereafter, and until December 10, 1918, the lumber company was an active going concern, seemingly able to pay its obligations in the usual course of its business, though now claimed by appellant to have been insolvent during that whole period. On December 23, 1918, the lumber company was adjudged insolvent by the Federal district court, which court soon thereafter appointed appellant trustee in bankruptcy for the lumber company. We need not inquire further as to the insolvency of the lumber company, since, as will presently appear, the question of its insolvency becomes immaterial to the determination of the rights of the parties here drawn in question. For present purposes, we adopt, with but slight explanation, the statement made by counsel for appellant in their brief, of the four transactions claimed by them as constituting unlawful preference payments by the lumber company to the bank, as follows:

"(1) On May 10, 1918, the Nooksack Lumber Company borrowed $2,000 from respondent on its unsecured note, which was repaid on June 14th by the bank charging the Nooksack Lumber Company account with $2,000 principal, and $13.50 interest (admitted by respondent).

"(2) On July 3, 1918, the Nooksack Lumber Company borrowed $2,000 from the respondent on its unsecured note, which was paid in the following manner, to wit: $1,000 by check dated August 8th, $500 by check dated August 9th, and respondent charged the Nooksack company account with the balance and interest

in the amount of $516.90 on August 14th. This last transaction created an overdraft of the Nooksack Lumber Company account in the amount of $2,814.33.

"(3) On September 26 the Nooksack Lumber Company negotiated to the respondent two notes each in the amount of $1,000 executed by A. F. Peterson and the West Coast Lumber Company respectively; which were paid by its check dated October 23 in the amount of $2,000 principal and $11.90 interest, which payment created an overdraft on the Nooksack Lumber Company account of $180.40.

"(4) On November 7, the Nooksack Lumber Company borrowed $2,000 from respondent on its unsecured note, which was paid on December 10, by respondent charging the Nooksack Lumber Company account with the balance then on hand, and in the amount of $1,274.73 and thereby created an overdraft upon said account in the amount . . ."

The first transaction, it is plain, amounts to nothing more than the cancellation of the lumber company's indebtedness to the bank by the cancellation of an equal amount of the bank's deposit indebtedness to the lumber company. As to the second transaction, it was not even a cancellation of any part of the indebtedness of the lumber company to the bank, but only a change of the form of the evidence of that indebtedness, from a note to an overdraft. The third transaction it is evident was but the cancellation of the lumber company's obligation to the bank upon the negotiated notes by the cancellation of the deposit indebtedness owing by the bank to the lumber company, and by further charging the lumber company with the overdraft of $180.40; and as to this latter sum, it was again but a simple change in the evidence of the balance of the indebtedness owing by the lumber company to the bank. The fourth transaction was, in its result, the same as the third.

It is plain from the record that all the checks given by the lumber company were drawn against its general deposit account with the bank, and that all the charges in question were made upon that account against the lumber company. Upon this state of facts, and the assumed insolvency of the lumber company at the time of each transaction, appellant seeks to recover the aggregate of all of these transactions, approximating $9,000, upon the theory that the bank has unlawfully obtained preferences over the general creditors of the lumber company in such aggregate sum while it was insolvent.

Counsel for appellant invoke the trust fund doctrine as applied in the prevention of preferring creditors by insolvent corporations. We are quite unable to see that such doctrine has any application to the proper solution of the problem here presented; for, as we view this case, there was no preference worked in favor of the bank as against general creditors of the lumber company. The bank did nothing more than exercise its right of set-off, and of striking a balance between items of indebtedness owing by the lumber company to it and by it to the lumber company; which resulted in demonstrating that the lumber company was ultimately indebted to it rather than it to the lumber company. This was plainly the result of the second, third, and fourth transactions. As to the first transaction, it so happened that the lumber company had sufficient to its credit in its deposit account to pay its note. The most elementary principles of the right of set off, it seems to us, are decisive of this case in favor of the bank. The law upon that subject is well stated in 3 R. C. L. 588, as follows:

"It may be stated as a general rule that when a depositor is indebted to a bank, and the debts are mutual

—that is, between the same parties, and in the same right—the bank may apply the deposit, or such portion thereof as may be necessary, to the payment of the debt due it by the depositor, provided there is no express agreement to the contrary, and the deposit is not specifically applicable to some other particular purpose. While this right is frequently called a lien, strictly speaking it is not such, when applied to a general deposit; for a person cannot have a lien on his own property, but only on that of another; and, as is well understood, funds on general deposit in a bank are the property of the bank. This right of a bank with respect to general deposits is more accurately a right of set off, for it rests upon, and is co-extensive with, the right to set off as to mutual demands.''

This court has recognized this as being the law in *Dunlap v. Seattle National Bank,* 93 Wash. 568, 161 Pac. 364, and *Puget Sound State Bank v. Washington Paving Co.,* 94 Wash. 504, 162 Pac. 870.

We conclude that the bank has received no unlawful preference as against general creditors of the lumber company by these transactions even though it be conceded that the lumber company was insolvent at the time of the occurrence of each of them. The judgment is affirmed.

HOLCOMB, C. J., FULLERTON, MACKINTOSH, and BRIDGES, JJ., concur.