Emma POWDERLY, et al., Plaintiff-Appellant,

v.

Richard S. SCHWEIKER, Secretary of the Department of Health and Human Services, and Donald T. Regan, Secretary of the Treasury, Defendants-Appellees.

No. 82–3092.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 1982.

Decided April 26, 1983.

Terrence Sawyer, Richard Smith, Spokane, Wash., for plaintiff-appellant.

A. George Lowe, Ellen J. Sazzman, Dept. of Justice, Washington, D.C., for defendants-appellees.

Before KILKENNY, CHOY and FLETCHER, Circuit Judges.

KILKENNY, Circuit Judge:

Appellant appeals from an order of the district court granting the defendants' motion for summary judgment and dismissing her complaint. She alleges that the government's method of recovering the proceeds of benefit checks erroneously sent to deceased beneficiaries violates the Social Security Act (Act), 42 U.S.C.A. § 404, the Administrative Procedure Act (APA), 5 U.S.C. § 551 et seq., the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Fifth Amendment. We affirm.

## FACTS

Appellant's husband died on August 24, 1978. Prior to his death, each received a social security benefit in the form of separate checks drawn in each of their names. Shortly after his death, appellant began receiving the statutory widow's benefits. On September 3, 1978, however, she also received her deceased husband's August social security check in the amount of $243.30.[1] She contends that the local office of the Social Security Administration (SSA) informed her that the check could be negotiated. Thereafter, she deposited the check in her account at Seattle-First National Bank (Sea-First), with the following endorsement: "Hugh C. Powderly by Emma L. Powderly for deposit only."

Sometime in January or early February, 1979, appellant was informed by the local office of the SSA that the $243.30 would have to be returned. To assist her in repayment, the SSA offered to make a $10.00 per month deduction from future benefits payments until the balance was fully paid. Appellant refused to authorize these deductions. Evidently, she was informed by her attorney that this erroneous payment constituted an "overpayment" under the Act and that she was entitled to a hearing to determine if recoupment could be waived. On February 16, 1979, she requested a "Notice of Overpayment" from the SSA. The SSA replied that this payment did not constitute an overpayment and, thus, she was not entitled to a hearing on waiver. The parties continued to dispute the overpayment issue for some time.

In the meantime, Sea-First forwarded the check to the Treasury and received payment. However, when the Treasury learned of the unauthorized endorsement, it initiated a recovery action against Sea-First.[2] Sea-First was liable to the Treasury

---

1. Appellant's husband's entitlement to social security benefits terminated with the July, 1978, installment pursuant to 42 U.S.C.A. § 402 which provides:

   (a) Every individual . . . shall be entitled to an old-age insurance benefit for each month, beginning with the first month after August

1950 in which such individual becomes so entitled to such insurance benefits *and ending with the month preceding the month in which he dies* . . . . [Emphasis added].

2. 31 C.F.R. § 240.5 (1981) provides:

   (a) The Treasury has the right to demand refund from the presenting bank of the

for accepting an unauthorized endorsement.[3] After refunding the proceeds to the Treasury, Sea-First exercised its Washington State statutory right of set-off against the appellant's bank account.[4]

## ISSUES

1. Whether the district court had jurisdiction under the mandamus statute, 28 U.S.C. § 1361.

2. Whether the benefits payment in question constitutes an "overpayment" under the Act and regulations promulgated thereunder.

3. Whether the method of recoupment utilized by the appellees violated the appellant's Fifth Amendment right to due process.

4. Whether the Social Security Claims Manual[5] (claims manual) provisions relating to "overpayments" were required to be published in the Federal Register pursuant to the APA or the FOIA.

## DISCUSSION

### Jurisdiction

■ We are convinced that the procedural claims raised by the appellant are properly brought under the mandamus statute. While the Supreme Court has yet to address the appropriateness of mandamus jurisdiction to review SSA procedures, see *Califano v. Yamasaki,* 442 U.S. 682, 698, 99 S.Ct. 2545, 2556, 61 L.Ed.2d 176 (1979); *Norton v. Mathews,* 427 U.S. 524, 529–30, 96 S.Ct. 2771, 2774, 49 L.Ed.2d 672 (1976); *Mathews*

*v. Eldridge,* 424 U.S. 319, 332 n. 12, 96 S.Ct. 893, 901 n. 12, 47 L.Ed.2d 18 (1976), this court recently addressed the issue in *Ringer v. Schweiker,* 697 F.2d 1291 (CA9 1982).

In *Ringer,* the court ruled that mandamus jurisdiction is proper to vindicate an interest in procedural regularity. *Id.* 697 F.2d at 1293. Citing *Daniel Freeman Memorial Hospital v. Schweiker,* 656 F.2d 473, 476 (CA9 1981), we stated that

the language prohibiting reliance on the federal question or mandamus provisions for any action 'to recover on a claim arising under' the Act only applied to actual claims for benefits. We noted that 'when suit is brought simply to vindicate an interest in procedural regularity, there is no statutory bar.'

*Ringer, supra,* 697 F.2d at 1293; *see also Humana of South Carolina, Inc. v. Califano,* 590 F.2d 1070, 1080 (CADC 1978); *Elliott v. Weinberger,* 564 F.2d 1219, 1226 (CA9 1977), aff'd in part and rev'd in part on other grounds sub nom. *Califano v. Yamasaki,* 422 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979).

In this case, appellant is challenging only procedural matters. She does not claim entitlement to the funds erroneously paid to her deceased husband. Even if successful in this action, she would not be awarded any benefits. Thus, under the mandate of *Ringer,* we reluctantly hold that mandamus jurisdiction is proper.

### Overpayment

Appellant's contention that the erroneous payment to her deceased husband constitut-

---

amount of a paid check if, after the check has been paid by the United States Treasury, it is found to bear a forged or unauthorized indorsement, or an indorsement by another for a deceased payee (or a deceased co-payee), where the right to the proceeds of such check terminated upon the death of the payee . . . .

**3.** 31 C.F.R. § 240.4 (1981) provides:

The presenting bank and the indorsers of a check presented to the Treasury for payment are deemed to guarantee to the Treasury that all prior indorsements are genuine. . . .

**4.** Washington Banks have the right to enter into agreements with their depositors which govern the terms of the depository relationship including the circumstances under which banks

may debit accounts. RCW 62A.4–103. *See Allied Sheet Metal Fabricators, Inc. v. Peoples National Bank of Washington,* 10 Wash.App. 530, 518 P.2d 734, *cert. denied,* 419 U.S. 967, 95 S.Ct. 231, 42 L.Ed.2d 183 (1974).

**5.** Appellant challenges claims manual provisions §§ 25.02–25.04, 118–118.04, 5500, 5501.1, 5521, 5521.5, 5510 and 5720.5. We have been informed that §§ 5521 and 5521.5 of the claims manual are no longer in effect. Also, §§ 25.02–25.04, and 118–118.04 are now contained in the Benefits Accounting, Exception and Alert Processing, and Check Inquiries Manual of the SSA.

ed an "overpayment" under the Act, entitling her to an overpayment waiver hearing under 42 U.S.C.A. § 404(a) and (b) is meritless.

The pertinent provisions of the Act provide:

(a) Whenever the Secretary finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made. . . .

(1) With respect to payment to a person of more than the correct amount, the Secretary shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such overpaid person or his estate to refund the amount in excess of the correct amount, or shall decrease any payment under this subchapter payable to his estate or to any other person on the basis of the wages and self-employment income which were the basis of the payments to such overpaid person, or shall apply any combination of the above. . . .

(b) In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without default if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

*Id.*

Regulations, promulgated by the Secretary of Health and Human Services, defining "overpayment" are found in 20 C.F.R. § 404.501 *et seq.* (1982). The regulations provide that

[a]s used in this subpart, the term "overpayment" includes a payment in excess of the amount due under Title II of the Act, a payment resulting from the failure to impose deductions or to suspend or reduce benefits . . ., a payment resulting from the failure to terminate benefits, and a

payment where no amount is payable under Title II of the Act.

20 C.F.R. § 404.501(a) (1982).

We hold that the overpayment waiver provisions of § 404(b), *supra,* are intended to benefit only designated payees who, through no fault of their own, have received more benefits than those to which they are entitled. It would be an abuse of the social security program to extend the overpayment waiver provisions to someone who has wrongfully negotiated a benefit check after the payee's death. The overall purpose of the social security program is to provide for the need of the beneficiaries.[6] *See Evelyn v. Schweiker,* 685 F.2d 351, 353 (CA9 1982). "Once the need of the beneficiary is extinguished, as by death . . ., there is no longer a reason to pay the beneficiary." *Id.* at 353. Moreover, there is no reason deriving from need or otherwise to allow someone other than the designated payee, including a surviving spouse, to retain the funds. In this case, appellant was receiving her own widow's benefits to which she was entitled.

Support for our decision is found in the claims manual, § 5500.1(a), which provides:

When a benefit check which was certified correctly is improperly negotiated by someone other than the designated payee, without the consent of the payee, *or after his death a forgery occurred; the amount of the check may not be considered an overpayment* . . . . The recovery of such amounts is the responsibility of the Treasury Department. [Emphasis added].

While the Secretary's interpretations above are not accorded the force and effect of law, *Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981); *Evelyn v. Schweiker, supra,* 685 F.2d at 352 n. 5; *Lewin v. Schweiker,* 654 F.2d 631, 633 (CA9 1981), they are of persuasive value. *See Morton v. Ruiz,* 415 U.S. 199, 232–37, 94 S.Ct. 1055, 1073–75, 39 L.Ed.2d 270 (1974).

---

**6.** H.R.Rep. No. 231, 92d Cong., 2d Sess. 2, *reprinted in* 1972 U.S.Code Cong. & Ad.News 4989, 4990.

We hold that the Secretary's interpretations are consistent with the language and intent of the Act and within his authority.

### Due Process

■ Appellant contends that appellees' method of recovering the funds constituted state action, which deprived her of a property interest in violation of the Fifth Amendment right to procedural due process. We disagree. Appellant has not shown that she has a protected property interest in the funds. Finding no protected property interest, we need not address her state action claim.

■ The requirement of procedural due process imposes constraints on governmental actions which deprive individuals of protected liberty and property interests. *Mathews v. Eldridge, supra,* 424 U.S. at 332, 96 S.Ct. at 901; *Goss v. Lopez,* 419 U.S. 565, 572–73, 95 S.Ct. 729, 735, 42 L.Ed.2d 725 (1975); *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Golden State Transit v. City of Los Angeles,* 686 F.2d 758, 760 (CA9 1982). A court must be convinced that the plaintiff has a property or liberty interest protected by due process before it can evaluate whether the process afforded that interest was adequate. *Richardson v. Koshiba,* 693 F.2d 911 at 916 (CA9 1982).

■ Property interests do not arise whenever an individual has "an abstract need or desire for," or "unilateral expectation of," a benefit. *Roth, supra,* 408 U.S. at

577, 92 S.Ct. at 2709; *Ressler v. Pierce,* 692 F.2d 1212 at 1214 (CA9 1982). Rather, an individual must have a legitimate claim of entitlement to the benefit created and defined by an independent source, such as state or federal law. *Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709; *Erdelyi v. O'Brien,* 680 F.2d 61, 63 (CA9 1982); *Golden State Transit v. City of Los Angeles, supra,* 686 F.2d at 760.

We recognize that the interest of an individual in continued receipt of social security benefits is a statutorily created "property" interest protected by the Fifth Amendment. *Mathews v. Eldridge, supra,* 424 U.S. at 332, 96 S.Ct. at 901. However, we are not here confronted with that issue. In the instant case, appellant has not been threatened with any adverse actions against her own social security benefits. Appellant's attempt to claim a property interest by reason of her own bank account is groundless. In reality, she is attempting to claim a property interest in the funds erroneously sent to her deceased husband, but cannot escape the fact that she has no entitlement to these funds. Appellant has failed to demonstrate that she was deprived of an interest that could invoke procedural due process protection.

### Publication of claims manual

Appellant contends that the claims manual provisions relating to overpayments[7] should have been published in the Federal Register pursuant to the APA[8] and the FOIA.[9]

---

**7.** *See* note 5 *supra.*

**8.** 5 U.S.C. § 553 provides in pertinent part:
(b) General notice of proposed rule making *shall be published in the Federal Register,* unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law
. . . .
Except when notice or hearing is required by statute, this subsection does not apply—
(A) to interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice:

.    .    .    .    .

(c) After notice required by this section, the agency shall give interested persons an op-

portunity to participate in the rule making . . . . [Emphasis added].

**9.** 5 U.S.C. § 552(a)(1)(D) provides in pertinent part:
(a) Each agency shall make available to the public information as follows:
(1) Each agency shall separately state and *currently publish in the Federal Register* for the guidance of the public—
(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency. [Emphasis added].

■ The APA requires an administrative agency to publish notice of a proposed substantive rule in the Federal Register to allow an opportunity for interested members of the public to comment. 5 U.S.C. § 553(b), (c). There is an exception for "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A). Appellant argues that the claims manual provisions relating to overpayments are substantive rules requiring publication in the Federal Register.

Substantive rules are those which effect a change in existing law or policy. *See Gosman v. United States,* 573 F.2d 31, 39 (Ct.Cl. 1978). Interpretive rules are those which merely clarify or explain existing law or regulations. *Id.* Contrary to appellant's contentions, the overpayment provisions in the claims manual do not change any existing law or policy, nor do these provisions remove any previously existing rights of social security recipients. These provisions only explain what the more general terms of the Act and regulations already provide. Appellant mistakenly asserts that prior to the claims manual provisions she was entitled to treatment under the overpayment provisions contained in § 404(b), *supra.* As previously held, under the circumstances of this case, appellant was never entitled to treatment under these overpayment provisions of the Act and regulations. Thus, her claim that these are substantive rules which changed existing practices must fail.

■ Appellant also contends that the overpayment provisions of the claims manual are "substantive rules of general applicability" or, alternatively, "interpretations of general applicability" which are required to be published in the Federal Register pursuant to the FOIA. 5 U.S.C. § 552(a)(1)(D). Having concluded that these provisions are interpretive rules, rather than substantive, we need only address whether these interpretations are of "general applicability."

In *Anderson v. Butz,* 550 F.2d 459 (CA9 1977), this court held that an administrative interpretation is not of general applicability if: "(1) only a clarification or explanation of existing laws or regulations is expressed; and (2) no significant impact upon any segment of the public results." *Id.* at 463. We are confronted with precisely that situation here. The overpayment provisions of the claims manual do not change any existing policy, law, or regulation. They merely clarify general terms of the Act and regulations. Moreover, these interpretations have no impact on the substantive rights of any segment of the public. The sole effect of the interpretations is to define those who do not qualify for overpayment treatment as including individuals who wrongfully obtain funds erroneously paid to deceased beneficiaries. Exclusion, where no right previously existed, does not constitute a change in substantive rights. Therefore, we conclude that publication in the Federal Register was not necessary.

## CONCLUSION

The order of the district court granting summary judgment is AFFIRMED.

FLETCHER, Circuit Judge, concurring:

I concur in the result, but write separately to record my disagreement with the majority's approach to appellant's claim that the government deprived her of a property interest in violation of her Fifth Amendment right to procedural due process. I suggest that the majority misperceives the nature of Powderly's due process claim. She asserts that in November, 1979, funds were taken from her own bank account by the government without due process. The majority mistakenly characterizes her claimed property interest as "a property interest in the funds erroneously sent to her deceased husband." These funds were embodied in a government check in her deceased husband's name that was mailed to her address fourteen months earlier in September, 1978, and that she endorsed and deposited in her checking account. The majority further characterizes her claim as a "unilateral" and "abstract" claim to her husband's social security benefits.

Neither characterization is accurate. Powderly objects to the debiting of *her*

bank account in November of 1979. The proceeds from her husband's check after fourteen months may or may not have been in that account when it was debited, but that is not relevant.

Were the *government* the actor in debiting the account, I would be in dissent asserting that appellant's bank account at Sea-First was a property interest protected from federal governmental deprivation without due process, *Anderson National Bank v. Luckett,* 321 U.S. 233, 240, 247, 64 S.Ct. 599, 603, 606, 88 L.Ed. 692 (1944) ("bank accounts" are "property" subject to due process); *see Fuentes v. Shevin,* 407 U.S. 67, 86, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556 (1972). I would find the majority's holding that the government need provide neither notice nor a hearing before seizing property (Powderly's bank account) completely untenable.

But it was not the government that debited Powderly's account. It was the bank. Sea-First's actions cannot "fairly be attributed" to the government of the United States. *See Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 157, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). Thus, no process was due from the government before Powderly's account was debited.

The federal government itself neither debited nor directed the bank to debit her account. The Treasury determined only that, pursuant to 31 C.F.R. § 240.5(a) (1982), Sea-First was liable to the Treasury for return of the amount paid by the Treasury to the bank on a check bearing an unauthorized endorsement. The Treasury made no determination as to who ultimately received the funds from the Treasury nor did it direct the bank to recover any funds from appellant. The only arguably federal government action was directed against Sea-First not appellant.

Nor can the actions of Sea-First in debiting Powderly's account be imputed to the federal government on some theory of agency. Sea-First's ability to debit appellant's account in the amount of the forged check derives not from some delegation of federal authority to the bank by the Treasury but from appellant's own depository contract with the bank and the self-help remedies authorized by Washington state law governing the relationship between financial organizations and their customers. Wash.Rev.Code Ann. § 62A.4–103 (1981); *see Conner v. First National Bank of Sedro-Woolley,* 113 Wash. 662, 665–66, 194 P. 562, 563 (1921); *Allied Sheet Metal Fabricators, Inc. v. Peoples National Bank of Washington,* 10 Wash.App. 530, 537–38, 518 P.2d 734, 739, *aff'd,* 83 Wash.2d 1013, *cert. denied,* 419 U.S. 967, 95 S.Ct. 231, 42 L.Ed.2d 183 (1974). Indeed, absent the sort of contractual arrangement under state law present here, a presenting bank could quite conceivably be unable to recover by debit a sum paid to a depositor on a check with an unauthorized endorsement, even though the Treasury, pursuant to federal law, is able to secure a refund from the bank. Thus, the bank in no way can be viewed as acting as the agent of the Treasury, since its rights of recovery against appellant are neither defined nor created by federal law.

Since appellant has failed to show that any action fairly attributable to the federal government deprived her of the funds deposited in the Sea-First account, I too would deny her due process claim, but for that reason and no other.