Sharon FRANKLET, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Dinah BACHRACH, Plaintiff,

v.

UNITED STATES of America,
Defendant.

John W. McCHESNEY–YOUNG and
Ann L. McChesney-Young,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Kolya M. BRAUN, Plaintiff,

v.

UNITED STATES of America.

Mary McKENNA, Plaintiff,

v.

UNITED STATES of America,
Defendant.

James T. AYERS, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Judith L. KAPLAN, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Timothy A. PEARCE, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Nos. C–83–3938–WWS, C–83–3939–WWS,
C–83–3957–WWS, C–83–3958–WWS, C–
83–4003–WWS, C–83–4004–WWS, C–83–
4218–WWS and C–83–4219–WWS.

United States District Court,
N.D. California.

Jan. 9, 1984.

Ralph Johansen, San Francisco, Cal., for plaintiffs.

Michael D. Howard, Asst. U.S. Atty., San Francisco, Cal., for defendant.

## MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

In these eight related actions, taxpayers have challenged penalties assessed against them by the Internal Revenue Service for filing "frivolous" 1982 income tax returns. Defendant has moved to dismiss the ac-

tions for failure to state a claim on which relief can be granted or alternatively for summary judgment. Plaintiffs have made cross-motions for summary judgment.

All the taxpayers oppose the use of their taxes to support or supply the military on ethical or religious grounds. The facts of the individual cases are established by the allegations of the complaints and counsel's oral stipulations at the hearing, are undisputed and are as follows:

In *Franklet v. United States,* No. C–83–3938–WWS, plaintiff claimed a "war tax credit" on line 42 of her 1982 Form 1040 tax return in the amount of $1876.

In *Bachrach v. United States,* No. C–83–3939–WWS, plaintiff claimed as a business expense deduction an "ethical redirection of military tax to social services" on line 30c of Schedule C to her 1982 Form 1040 tax return in the amount of $3354.

In *McChesney-Young v. United States,* No. C–83–3957–WWS, plaintiffs claimed a "war tax deduction" on line 26 of Schedule A to their 1982 joint Form 1040 tax return in the amount of $14,422.81.

In *Braun v. United States,* No. C–83–3958–WWS, plaintiff claimed a "war tax credit" on line 48 of her 1982 Form 1040 tax return in the amount of $99.68.

In *McKenna v. United States,* No. C–83–4003–WWS, plaintiff alleges in her complaint that she "wrote a statement across the tax form generally protesting the uses to which a stated percentage of the tax paid was put, which corresponded to the amount used for military spending," but "made no other entry on her return than that required by the law and regulations, taking no 'war tax deduction.'" At the hearing on these motions, however, counsel stipulated that, in addition to a notation of protest, plaintiff claimed a credit against tax pursuant to her protest at line 19b of her 1982 Form 1040A tax return in the amount of $184. She then entered two sets of figures at line 20 (total tax) and line 21 (refund claimed), one incorporating the credit, one not.

In *Ayers v. United States,* No. C–83–4004–WWS, plaintiff claimed a "war tax deduction" on line 26 of Schedule A to his 1982 Form 1040 tax return in the amount of $6074.27.

In *Kaplan v. United States,* No. C–83–4218–WWS, plaintiff claimed a credit against tax based on a payment "to Alternative Fund" on line 63 of her 1982 Form 1040 tax return in the amount of $835.

In *Pearce v. United States,* C–83–4219–WWS, plaintiff claimed a "Conscience War Tax Deduction" on line 26 of Schedule A to his 1982 Form 1040 tax return in the amount of $1848.42.

The IRS assessed each of the plaintiffs a $500 penalty pursuant to 26 U.S.C. § 6702.[1] As required by *id.* § 6703(c), each paid 15% of his or her penalty ($75), and demanded a refund and abatement from the IRS. The IRS denied each claim. Each plaintiff then filed an action in district court for a refund of that portion of the penalty already paid, and abatement of the remainder. Plaintiffs challenge the penalties on numerous statutory and constitutional grounds.

I. Scope of the Statute

Plaintiffs initially assert that the penalty may not be assessed against them because their actions fall outside the scope of the statute. However, the statute's plain language, supported by clear legisla-

1. 26 U.S.C. § 6702 provides, in relevant part:

(a) Civil penalty.—If—

(1) any individual files what purports to be a return of the tax imposed by subtitle A but which—

(A) does not contain information on which the substantial correctness of the self-assessment may be judged, or

(B) contains information that on its face indicates that the self-assessment is substantially incorrect; and

(2) the conduct referred to in paragraph (1) is due to—

(A) a position which is frivolous, or

(B) a desire (which appears on the purported return) to delay or impede the administration of Federal income tax laws.

then such individual shall pay a penalty of $500.

tive history, demonstrates that plaintiffs' actions are precisely those that Congress intended the statute to reach. Under § 6702, a penalty is assessable only if two criteria are met. First, the taxpayer's return must either "not contain information on which the substantial correctness of the self-assessment may be judged," § 6702(a)(1)(A); or "contain[ ] information that on its face indicates that the self-assessment is substantially incorrect," § 6702(a)(1)(B). Whatever other meaning may be attributed to the term "self-assessment", it clearly includes a taxpayer's representations on the return as to the tax due or refund claimed. The legislative history specifies that "the penalty could be imposed against any individual filing a 'return' showing an incorrect tax due, or a reduced tax due, because of the individual's claim of a clearly unallowable deduction...." S.Rep. No. 494, 97th Cong., 2d Sess. 278 (1982), *reprinted in* 1982 U.S. Code Cong. & Ad.News 781, 1024. *See also* section III A, *infra.* All the returns at issue here save plaintiff McKenna's unequivocally claim such an "incorrect tax due ... because of a clearly unallowable deduction." These returns thus plainly "contain[ ] information that on its face indicates that the self-assessment is substantially incorrect," and satisfy § 6702(a)(1)(B). Plaintiff McKenna's return provides two sets of figures for tax due, one reflecting an impermissible "war tax" reduction, and the other not. Because McKenna failed to specify which of the two figures on her return represented her self-assessment, her return "does not contain information on which the substantial correctness of the self-assessment may be judged," and thus satisfies § 6702(a)(1)(A).

Second, the penalty may be assessed against a taxpayer only if the conduct discussed above results from the taxpayer's taking a "position which is frivolous," § 6702(a)(2)(A); or the taxpayer's "desire (which appears on the purported return) to delay or impede the administration of Federal income tax laws," § 6702(a)(2)(B). The incorrectness or incompleteness of the plaintiffs' returns results here from their adoption of positions that are "frivolous" within the statute's meaning. The legislative history states that:

> the penalty could be imposed against any individual filing a 'return' showing ... a reduced tax due, because of the individual's claim of a ... 'war tax' deduction under which the taxpayer reduces his taxable income or shows a reduced tax due by that individual's estimate of the amount of his taxes going to the Defense Department budget ....[2]

S.Rep., *supra,* at 278, *reprinted in* 1982 U.S.Code Cong. & Ad.News at 1024. Moreover, the long and unbroken line of authority establishing the impermissibility of these tax reductions dispels any doubt that plaintiffs' positions are "frivolous" within the meaning of the statute. *See, e.g., Lull v. Commissioner,* 602 F.2d 1166 (4th Cir. 1979), *cert. denied,* 444 U.S. 1014, 100 S.Ct. 664, 62 L.Ed.2d 643 (1980); *First v. Commissioner,* 547 F.2d 45 (7th Cir.1976) (per curiam); *Autenrieth v. Cullen,* 418 F.2d 586 (9th Cir.1969), *cert. denied,* 397 U.S. 1036, 90 S.Ct. 1353, 25 L.Ed.2d 647 (1970).[3] *See also* section III A, *infra.*

2. Plaintiffs proffer letters from Senators Grassley and Hatfield to the Commissioner of Internal Revenue, and from Representative Rostenkowski to Speaker O'Neill expressing doubt as to whether § 6702 was intended to be applied to those, such as plaintiffs, who take "war tax" reductions on bona fide religious or conscientious grounds. These documents, all dated over a year after the statute's enactment, and apparently responding to complaints of constituents assessed under it, can be given little weight in light of the unequivocal contemporary legislative history, referred to in the text. That history was the product of the committees on which those legislators sat, and was before the Congress when it enacted the statute. Plaintiffs offer no evidence of any discussion of a conscientious objector exception to § 6702 contemporaneous with the bill's passage from which Congressional awareness could be inferred. *See TVA v. Hill,* 437 U.S. 153, 191–92, 98 S.Ct. 2279, 2300, 57 L.Ed.2d 117 (1978).

3. Plaintiffs contest the characterization of their positions as "frivolous" on the basis of assertedly novel issues raised in *Doyle v. Commissioner,* T.C. Memo 1982–740, now on appeal to the Second Circuit, No. 83–4070. The Tax Court found the taxpayers' arguments in that case

These are not cases in which taxpayers rely on a colorable interpretation of the tax code or assert negligence in the preparation of their returns. Plaintiffs' positions fall squarely within § 6702(a)(2)(A), and the penalties were therefore properly assessed.

II. Substantive First Amendment Challenges

A. *Right to Petition the Government for Redress of Grievances*

Plaintiffs argue that the penalties assessed against them impermissibly restrict the right to petition the government for redress of grievances guaranteed to them by the First Amendment. The argument is without substance. Penalizing an individual who seeks to claim frivolous tax deductions in no way hinders that individual from complaining to any government official about the way those taxes are spent. *See, e.g., Cupp v. Commissioner,* 65 T.C. 68, 83–84 (1975), *aff'd,* 559 F.2d 1207 (3d Cir.1977).

B. *Free Exercise of Religion*

Plaintiffs also argue that the § 6702 penalty impermissibly burdens their First Amendment right to the free exercise of religion.[4] This contention is meritless as well. The necessities of revenue collection under enactments of general applicability raise governmental interests sufficiently compelling to outweigh the free exercise rights of those who find the tax objectionable on bona fide religious grounds. As the Supreme Court recently stated: "The tax system could not function if denominations were allowed to challenge the tax system because tax payments were spent in a manner that violates their religious belief." *United States v. Lee,* 455 U.S. 252, 260, 102 S.Ct. 1051, 1056, 71 L.Ed.2d 127 (1982). *See also Autenrieth, supra,* 418 F.2d at 588–89; *cf. Kalish v. United States,* 411 F.2d 606 (9th Cir.) (per curiam), *cert. denied,* 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 86 (1969). The penalty in question here applies to any taxpayer adopting any frivolous position for any reason. It does not penalize plaintiffs' exercise of conscience as such any more than the taxes they originally sought to avoid. "On matters religious, it is neutral." *Autenrieth, supra,* 418 F.2d at 588.

C. *Freedom of Expression*

Similar reasoning applies to any claim that § 6702 impermissibly abridges plaintiffs' First Amendment rights to freedom of expression. Even if plaintiffs' attempts to avoid or redirect their taxes were treated as expressive activity protected by the First Amendment, the authorities cited above establish that the necessities of maintaining a revenue system raise a compelling governmental interest under these circumstances adequate to override this fundamental right. *See United States v. Malinowski,* 472 F.2d 850, 857–58 (3d Cir.), *cert. denied,* 411 U.S. 970, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973). *Cf. Lee, supra,* 455 U.S. at 259–60, 102 S.Ct. at 1056. And those necessities are served here by means that are both narrowly tailored to their object and plainly content-neutral. *See United States v. O'Brien,* 391 U.S. 367, 376–77, 88 S.Ct. 1673, 1678–79, 20 L.Ed.2d 672 (1968). The statute's legislative history demonstrates the substantial and growing interference with the effective functioning of the revenue system created by frivo-

"unsupportable," but denied sanctions under 26 U.S.C. § 6673 (for proceedings "instituted merely for delay") on the basis of their sincere, albeit misguided, good-faith belief in the merit of their legal position, which they had had no prior opportunity to test. The court specifically noted, however, that the taxpayers' arguments had now been authoritatively rejected, and "the field of undecided valid questions surrounding the claimed 'war tax credit' has become almost barren;" thus future reliance on good-faith belief in the validity of their legal position would be precluded. The decision provides no support for plaintiffs' position here.

4. Plaintiffs' complaints also make generalized references to a right to "freedom of conscience under the First, Fifth, and Ninth Amendments to the Constitution." In the absence of any authority to the contrary, such a right, if it exists, must be taken to be coextensive with the First Amendment rights discussed in the opinion.

lous tax returns such as the ones at bar. *See* S.Rep., *supra,* at 277, reprinted in 1982 U.S.Code Cong. & Ad.News at 1023–24. Section 6702 provides a modest and closely focused deterrent against precisely the behavior Congress legitimately sought to deter, and does not inhibit resort to other more direct and effective avenues of expression.

Indeed, tax protest has been considered a disfavored means of exercising these civil rights, the taxpayer's appropriate remedy lying in direct participation in the collective political process. *See United States v. War Resisters League,* 45 A.F.T.R.2d (P–H) ¶ 80–605 (S.D.N.Y.1979); *cf. United States v. Richardson,* 418 U.S. 166, 179, 94 S.Ct. 2940, 2947, 41 L.Ed.2d 678 (1974). Plaintiffs' attempt to transform a sincere belief in the moral rectitude of their vision of what the polity should be into absolution for flouting the laws of the polity that exists is not shielded by the First Amendment:

> To urge that violating federal law which has a direct or indirect bearing on the object of the protest is conduct protected by the First Amendment is to endorse a concept having no precedent in any form of organized society where standards of societal conduct are promulgated by some authority ....
>
> Thus posited, [plaintiffs'] First Amendment argument is but a suggestion that a member of society can be absolved of the responsibility for obeying a given law ... if he can prove a sincere, abiding, and good faith objection to the direct or indirect object of that law. Such a position represents a feeble effort to emasculate basic principles of civil disobedience, and, simply stated, is invalid. Here the actor wants the best of both worlds: to disobey, yet be absolved of punishment for disobedience.

*Malinowski, supra,* 472 F.2d at 857.

## III. Vagueness and Overbreadth

Plaintiffs also launch facial challenges against § 6702 on the grounds that it is overbroad and vague. Neither of these contentions has merit.

### A. *Vagueness*

Plaintiffs contend that the indeterminacy of the words "frivolous" and "self-assessment" renders § 6702 void for vagueness. The claim cannot be supported. All due process requires is a definition of the infraction "in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with...." *Civil Serv. Comm'n v. National Ass'n of Letter Carriers,* 413 U.S. 548, 579, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973). That standard is met here.

With respect to the term "frivolous," its interpretation and application will in most cases be beyond dispute. In those cases, a taxpayer exercising the common sense of an ordinary person will know or have reason to know that the reductions he or she proposes are, as Congress defines the term, "clearly unallowable," *see* S.Rep., *supra,* at 278, *reprinted in* U.S.Code Cong. & Ad. News at 1024, or as the dictionary defines it, "hav[e] no basis in law or fact," *Webster's Third New International Dictionary* 913 (unabridged ed. 1971). "[T]he general class of offenses to which the statute is directed is plainly within its terms, [and it] will not be struck down as vague, even though marginal cases could be put where doubts might arise." *United States v. Harriss,* 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954).

Similarly, the statutory term "self-assessment" has a simple meaning in this context apparent to ordinary common sense. Plaintiffs point to numerous differing technical uses of the words "assessment" and "self-assessment" in tax statutes, regulations and cases, but these uses are beside the point. Read in the context of the statute at issue here, it is obvious that the term refers simply to the taxpayer's representations to the government on his or her return regarding taxes due. *See* part I, *supra; Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938); *Macatee v. United States,* 214

F.2d 717, 720 (5th Cir.1954); Treas.Reg. § 601.103(a), 26 C.F.R. § 601.103(a).

But plaintiffs' vagueness challenge must fail on an even more immediate ground. The Supreme Court has made it clear that "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). Inasmuch as plaintiffs' actions fall squarely within the statute's unambiguous prohibitions (*see* part I, *supra*), they lack standing to raise the vagueness objections.

B. *Overbreadth*

Plaintiffs' overbreadth challenges are equally meritless. "In a facial challenge to the overbreadth ... of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail." *Hoffman Estates, supra,* 455 U.S. at 494, 102 S.Ct. at 1191. *See also New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 3360–63, 73 L.Ed.2d 1113 (1982); *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973). As was demonstrated in part II, *supra,* § 6702 does not infringe constitutionally protected conduct. It therefore cannot be struck down as overbroad.

IV. Procedural Challenges

Finally, plaintiffs attack the penalties by asserting defects in the procedures by which they were assessed and may be challenged. These claims too are without merit.

A. *Freedom of Information Provisions of the Administrative Procedure Act*

Plaintiffs argue that the IRS's failure to publish interpretive guidelines for § 6702 in the Federal Register violates the freedom of information provisions of the Administrative Procedure Act, specifically 5 U.S.C. § 552(a)(1)(D).[5] As a result, they argue, § 6702 may not be applied to them. The claim has no force here. The assessment of the penalty on plaintiffs is no more than the direct application of the plain terms of the statute supported by unambiguous legislative history. No administrative guidelines were necessary for plaintiffs to have reason to know that the actions they took would subject them to the statutory sanction.

Even assuming relevant guidelines existed, § 552(a)(1)(D) does not require their publication. Publication of an administrative interpretation is not required when "(1) only a clarification or explanation of existing laws or regulations is expressed; and (2) no significant impact upon any segment of the public results." *Powderly v. Schweiker,* 704 F.2d 1092, 1098 (9th Cir. 1983); *Anderson v. Butz,* 550 F.2d 459, 462–63 (9th Cir.1977). Both criteria are met here. Any interpretation of § 6702 applicable to plaintiffs would only reiterate Congress's plainly expressed intent that "war tax" reductions be considered "frivolous." As such, those interpretations would change nothing and would thus "have no impact on the substantive rights

5. 5 U.S.C. § 552(a) provides in relevant part:

(a) Each agency shall make available to the public information as follows:

(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

* * * * * * *

(D) substantive rules of general policy or interpretations of general applicability formulated and adopted by the agency; and

(E) each amendment, revision, or repeal of the foregoing.

Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published. For the purpose of this paragraph, matter reasonably available to the class of persons affected thereby is deemed published in the Federal Register when incorporated by reference therein with the approval of the Director of the Federal Register.

of any segment of the public." *Powderly, supra,* 704 F.2d 1098.[6]

B. *Defects in Notice*

Plaintiffs assert that the IRS notice informing them of the penalties assessed against them violates both the statutory procedure prescribed for § 6702 penalties and their Fifth Amendment right to due process. In each case at bar, the taxpayer received a notice from the IRS stating: "You have been assessed a penalty under Section 6702 of the Internal Revenue Code for filing a frivolous income tax return." Each taxpayer paid the 15% of the penalty required to challenge it, *see* § 6703(c)(1), and demanded a refund and abatement on IRS Form 843, which instructs the taxpayer to "Explain why you believe this claim should be allowed and show computation of tax refund or abatement." Each taxpayer was subsequently informed that his or her claim had been disallowed in full on the ground that "The reasons stated in your claim do not constitute adequate basis for abatement of your penalty."

The government's actions were entirely consistent with 26 U.S.C. § 6703, which dictates the procedures to be followed in assessing, challenging, and collecting penalties under § 6702. Section 6703(b) provides that the procedures normally required in deficiency or penalty assessments are inapplicable to § 6702 penalties; thus violation of any of those provisions would be irrelevant. And § 6703 provides no requirements with respect to form or specificity of notice. Plaintiffs' assertion that the conclusory nature of the IRS's notices violates § 6703 by effectively shifting the burden of proof that § 6703(a) allocates to the government in taxpayer actions challenging the § 6702 penalty is without substance. The IRS still bears the burden of proving by a preponderance all factual predicates for imposition of the penalty. As discussed below, there is nothing to suggest that the government's use of general language to deny plaintiff's claims has in any way prejudiced plaintiffs' conduct of these actions.

Nor did government practice deprive the taxpayers of due process. The notice each plaintiff received recited the assessment of the penalty, the taxable year for which it was assessed, and the statutory basis for assessment. Due process requires no more. *See Abatti v. Commissioner,* 644 F.2d 1385, 1389 (9th Cir.1981); *Commissioner v. Stewart,* 186 F.2d 239, 241 (6th Cir.1951) (per curiam); *Olsen v. Helvering,* 88 F.2d 650, 651 (2d Cir.1937) (L. Hand, J.); *Jarvis v. Commissioner,* 78 T.C. 646, 655–56 (1982).

Plaintiffs point to Treas.Reg. § 301.-6402–2(b), 26 C.F.R. § 301.6402–2(b), which requires the taxpayer to "set forth in detail each ground on which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof" in order for the claim to be considered. They apparently fear that the government's general language in assessing the penalty might deprive an individual of a meaningful opportunity to contest the government's assessment in his or her refund claim, and later work to foreclose meritorious grounds of challenge in a refund suit. While such a scenario might raise due process problems (though the proposition is subject to substantial doubt, *see e.g., Herrington v. United States,* 416 F.2d 1029 (10th Cir.1969)), it simply has not occurred here. No plaintiff has been prevented from raising any legal or factual objection to the imposition of the penalty. Plaintiffs' generalized apprehensions have not materialized in this case, and therefore cannot form the basis for a challenge to the assessment.

6. Inasmuch as plaintiffs point to no administrative regulation that has caused them injury, they can assert no violation by omission of the notice and comment procedures required for "substantive" agency rulemaking under 5 U.S.C. § 553. Given the claims for which plaintiffs have been penalized, it is in any case doubtful that any rule of which they could complain would qualify as "substantive," and thus be subject to the notice and comment procedures, rather than be merely "interpretive," and thus outside them. *See Powderly, supra,* 704 F.2d at 1098.

C. *Lack of a Predeprivation Hearing*

Plaintiffs lastly argue that the requirement in § 6703(c) that the taxpayer pay 15% of the penalty before having standing to challenge it in district court deprived them of property without due process. Controlling authority directly refutes this contention. The constitutionality of tax collection without a predeprivation hearing has long been established. As Justice Brandeis declared: "Where only property rights are involved, mere postponement of the judicial inquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate." *Phillips v. Commissioner,* 283 U.S. 589, 596–97, 51 S.Ct. 608, 611, 75 L.Ed. 1289 (1931). Although the Supreme Court's later opinion in *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), significantly narrowed the range of property deprivations that the State might constitutionally effect without a prior hearing, it specifically approves *Phillips* and reaffirms the constitutional propriety of deferring judicial review of a tax until after its collection.[7] *Id.* at 92 n. 24, 92 S.Ct. at 2000 n. 24. *Phillips* was also discussed at length in *Commissioner v. Shapiro,* 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976), in which the Court noted that the government's interest in collecting revenues is sufficient to justify seizure of a taxpayer's assets without a prior hearing, at least in the absence of a showing of irreparable harm to the taxpayer. *See id.* at 629–630 & nn. 11–12, 96 S.Ct. at 1071–72 & nn. 11–12. Here plaintiffs make no showing of irreparable harm. They have been required only to pay a nominal sum of money.[8] Moreover, in *Bob Jones University v. Simon,* 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974), which *Shapiro* neither distinguishes nor disapproves, the Court squarely held that due process was not violated where no injunction was available to delay revocation of the plaintiff's tax-exempt status pending court challenge of the IRS's decision. The Court explicitly noted that substantial harm was done even before a Tax Court challenge could be launched, inasmuch as the striking of the University's name from the Cumulative List of tax-exempt organizations severely hampered its fundraising efforts. *Id.* at 747, 94 S.Ct. at 2051. Thus even though the option of precollection Tax Court review was insufficient under the circumstances to avert substantial pecuniary harm, due process was not offended: "[A]lthough congressional restriction to postenforcement review may place an organization ... in a precarious financial position, the problems presented do not rise to the level of constitutional infirmities ...." *Id.* at 747, 94 S.Ct. at 2051. All due process requires in this context is "a full, albeit delayed, opportunity to litigate the legality" of the government's action. *Id.* at 746, 94 S.Ct. at 2051. Plaintiffs are exploiting that very opportunity in the actions at bar.

The Courts of Appeals have uniformly extended the reasoning of these cases to claims involving penalty as well as deficiency assessments, and to situations where *no* precollection review, in Tax Court or district court, is statutorily available. *See, e.g., Boynton v. United States,* 566 F.2d 50, 53 & n. 2 (9th Cir.1977); *Bernardi v. United States,* 507 F.2d 682 (7th Cir.1974) (per curiam), *adopting opinion of district court,* 74–1 U.S.Tax Cas. (CCH) ¶ 9170 (N.D.Ill.1973), *cert. denied sub nom. Richter v. United States,* 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 693 (1975); *Kalb v. United States,* 505 F.2d 506, 510 (2d Cir. 1974), *cert. denied,* 421 U.S. 979, 95 S.Ct.

7. This exception for revenue collection is consistent with the long history of accepted summary tax collection procedures. As Justice Brandeis notes in *Phillips,* federal excise taxes as early as 1791 contained provisions for collection by distraint and sale. 283 U.S. at 595 n. 5, 51 S.Ct. at 611 n. 5.

8. Plaintiffs assert that the payment requirement of § 6703 does them irreparable harm because the payment of any portion of the penalty is repugnant to their religious or ethical beliefs, and violates their "freedom of conscience." For the reasons discussed in part II, *supra,* this assertion is insufficient to support a claim of irreparable harm.

1981, 44 L.Ed.2d 471 (1975); *Fendler v. United States,* 441 F.2d 1101 (9th Cir.1971) (per curiam). In short, no aspect of the assessment or prepayment procedures set out in § 6703 violated plaintiffs' due process rights.

Conclusion

All plaintiffs except Mary McKenna have failed to state a claim on which relief can be granted. Their actions are dismissed with prejudice under Fed.R.Civ.P. 12(b)(6). Treating the government's motions as motions for summary judgment, and taking into consideration the stipulated facts respecting the relevant particulars of the returns filed by the various plaintiffs including McKenna, the Court concludes that there is no genuine dispute as to any material fact, and that the government is entitled to judgment as a matter of law. The government's motions for summary judgment are granted, and plaintiffs' motions are denied. Judgment will be entered in favor of the government in all eight actions, the parties to bear their own costs.

IT IS SO ORDERED.