[No. 10682–1–I.   Division One.   January 16, 1984.]

SHEENA R. AEBIG, *as Trustee, Appellant,* v. COMMERCIAL BANK OF SEATTLE, *Respondent.*

*Geoffrey Groshong* and *Erickson & Groshong,* for appellant.

*Gary East,* for respondent.

CORBETT, A.C.J.—Appellant, Sheena R. Aebig, as Trustee in Bankruptcy for Phil Senour Travel, Inc., d/b/a Alaska Air–Sea Tours (the Agency), appeals the judgment of dismissal of her action for money due against respondent, Commercial Bank of Seattle (Bank). We affirm.

Until May 1979, the Agency was a Washington corporation with its principal place of business in Seattle. It operated a travel agency and its major business consisted of organizing and selling Alaska tours to other travel agencies

for ultimate resale to the public. To purchase such a tour a travel agency would pay the Agency a deposit, usually $100 per person. Approximately 60 days in advance of the tour date, payment of the balance of the tour price would be made to the Agency, which would then issue tickets or vouchers for the transportation and accommodations for the tour. The Agency would not provide services before receiving payment. If a customer canceled a prepaid tour before its scheduled date, the Agency would pay refunds based upon the service performed and the notice given for cancellation. The Agency earned a commission on each tour. It also engaged in a general travel agency business and obtained income from the commission for sale of tickets and accommodations. It generated other cash flow from refunds of prepayments made on tours which were later canceled and from fees charged for use of its copying machine. The Agency maintained a corporate checking account with the respondent Bank.

In the second half of 1978 and until May 1979, the Agency was experiencing financial difficulty and its checking account was overdrawn during much of that time. On May 16, 1979, the Agency was indebted to the Bank in the principal sum of $55,000. The note evidencing this obligation was past due and the Bank on that day set off approximately $25,000 in the Agency's checking account against its indebtedness to the Bank. On May 18, 1979, the Agency voluntarily petitioned for adjudication under chapter 7 of the Federal Bankruptcy Act.

Aebig, as trustee, subsequently commenced this action to recover the funds that had been in the checking account. The parties stipulated that she had standing to bring the action on behalf of customers of the Agency who made prepaid trip deposits. The court held that the Bank had properly exercised its right of setoff and dismissed the action.

The trustee contends that the funds seized by the Bank were trust funds, since at the time of setoff the Agency, as constructive trustee, was indebted to its customers in an amount in excess of the balance of the checking account.

The trustee argues that a constructive trust must be imposed because the Agency wrongfully accepted and retained prepayments from customers for services which were never provided.

> When property has been acquired under such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts such holder into a trustee. Perry on Trusts, 309, § 183.

*Scymanski v. Dufault,* 80 Wn.2d 77, 89, 491 P.2d 1050 (1971).

In the instant case there was no express or implied contract or agreement between the Agency and the Bank as to special treatment of funds deposited in the checking account. The Agency did not segregate the funds deposited. The account contained all funds received by the Agency and was used to pay its general expenses and cover the overdrafts that frequently occurred. The ability to trace the trust funds into the hands of the Bank is crucial, because the claimant seeking to obtain a constructive trust must identify specific property as the res of the trust to which she is entitled. G. Bogert, *Trusts and Trustees* § 471, at 9 (2d rev. ed. 1978).

■■ We do not reach the question of whether commingling the funds prevented tracing. In the present instance, the requisite trust relationship between the Agency and its customers was not established. The definition of constructive trust emphasizes the relationship between the person holding title to property and the person asserting the claim to it as the factor creating the equitable duty to convey. Restatement (Second) of Trusts § 1, comment *e* (1959). If this relationship is not shown to exist between the Agency and its customers, no constructive trust is established.

> When property of the estate is alleged to be held in trust, the burden rests upon the claimant to establish the original trust relationship. He must prove his title, identify the trust fund or property, and where the fund or

property has been mingled with the general property of the debtor, the claimant must sufficiently trace the property. However, if it cannot first be shown that a trust has been created, there is no necessity for inquiry as to whether the property can be identified or traced. Additionally, where the recipient of the funds can by agreement use them as his own and commingle them with his own monies, a debtor–creditor relationship exists, not a trust.

(Footnote omitted.) 4 W. Collier *Bankruptcy* ¶ 541.13, at 541–70 through 541–71 (15th ed. 1983). The Agency received funds from its customers which it had a right to deposit and use in the general operation of its business. No trust relationship arose. *See Heidelbach v. Campbell,* 95 Wash. 661, 668, 164 P. 247 (1917). Because the funds set off were general funds and not trust funds, review of the trustee's other assignments of error is unnecessary. It is well settled that when a bank and depositor have mutual debts, the bank may set off the deposit against the debt owed it by the depositor. *Conner v. First Nat'l Bank,* 113 Wash. 662, 665–66, 194 P. 562 (1921). *See also* RCW 62A.4–401(1).

Affirmed.

ANDERSEN and SCHOLFIELD, JJ., concur.