**Edmund R. PITTS, Plaintiff-Appellant,**

v.

**UNITED STATES of America et al., Defendants-Appellees.**

**No. 78–1567.**

United States Court of Appeals, First Circuit.

Argued April 12, 1979.

Decided June 20, 1979.

---

Edmund M. Pitts, Boston, Mass., pro se.

Patrick A. Fayle, Atty., U. S. Dept. of Justice, Washington, D. C., with whom Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., Edward F. Harrington, U. S. Atty., Boston, Mass. and Morton Hollander, Atty., U. S. Dept. of Justice, Washington, D. C., were on brief, for defendants-appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

This is an action against the United States for breach of contract for wages and a tort claim for libel. After plaintiff-appellant had presented his case, the government, defendant-appellee, moved for dismissal pursuant to Fed.R.Civ.P. 41(b). The district court, after receiving briefs from the parties, issued a written opinion granting the motion. The findings of fact made by the court below must be affirmed unless clearly erroneous. 5 Moore's Federal Practice § 41.13[4] at 196–98 (1978); 9 Wright & Miller, Federal Practice & Procedure: Civil § 2376 at 248 (1971).

## THE FACTS

Appellant is a 1972 graduate of the Massachusetts Maritime Academy and a 1976 graduate of Suffolk Law School and resident of Massachusetts. The government agency involved is the Military Sealift Command, Atlantic (Sealift). Appellant was employed in the Merchant Marine as a third assistant engineer in the few months between his graduation in June of 1972 from the Maritime Academy and his enrollment in Suffolk Law School in September of 1972 as a full-time student. After completing two years of law school, he had to take time off in order to earn $2,000 necessary to pay the tuition for his final two semesters. In late May or early June of 1975, he responded to an advertisement by Sealift for diesel engineers which he saw in the Boston Globe. In the course of applying for this position, appellant filled out at least three federal employment application forms. He was accepted for employment by Sealift and, on June 18, 1975, was assigned to the USNS HAYES as a third assistant engineer. On August 7, 1975, while the HAYES was en route to Halifax, Nova Scotia, appellant wrote the following letter:

> To Whom It May Concern;
>
> Due to problems of a personal nature, it is imperative I resign my position with the Military Sealift Command, effective August 12, 1975 or on the day the ship arrives in the next port.

Both the Chief Engineer and the Master of the vessel discussed appellant's intention to leave the ship with him, and there was evidence from which it could reasonably be found that he was told that, if he left the ship without authorization, he would be committing a disciplinary offense. Shortly after the HAYES docked in Halifax on August 12, appellant left the ship and never returned.

Appellant was subsequently notified that he was charged with desertion and, if the charge were substantiated, all his unpaid wages would be forfeited. He also was informed as to the procedure for contesting the charge. His reply was that he never agreed in writing to remain with Sealift or

the HAYES for any specified period of time and that legal[1] action would be instituted if his wages were not forwarded promptly. Appellant was subsequently found to have deserted the ship and his wages were held forfeited. This law suit followed. No claim is made by appellant that the processing of the charges denied him due process of law and no claim is made by the government that he failed to exhaust his administrative remedies.

The amended complaint alleges a cause of action under 46 U.S.C. §§ 781 "*et seq.*" or, alternatively, under 46 U.S.C. §§ 741 "*et seq.*" and pursuant to 28 U.S.C. § 1916.[1] It seems clear that the applicable statute is 46 U.S.C. § 742,[2] and we so construe the loosely worded complaint.[3] Appellant seeks the wages that Sealift found forfeited and damages under a second count for tortious libel based on Sealift's determination and publication of the finding that he was a deserter.

■ While appellant raises seven separate issues on appeal, the core of his case is his claim that, since he did not sign shipping articles with Sealift, he was free to leave the HAYES at any time. This is predicated on the assumption that 46 U.S.C. § 564,[4] which requires shipping articles for merchant seamen, also applies to seamen working for Sealift. This assumption is unfounded.

Appellant cites no cases for this proposition, and we have found none. Most of the cases cited by appellant have to do with the effect and construction of shipping articles

1. 28 U.S.C. § 1916:
   In all courts of the United States, seamen may institute and prosecute suits and appeals in their own names and for their own benefit for wages or salvage or the enforcement of laws enacted for their health or safety without prepaying fees or costs or furnishing security therefor.

2. 46 U.S.C. § 742 reads in pertinent part:
   In cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate non-injury proceeding in personam may be brought against the United States or against any corporation mentioned in section 741 of this title. Such suits shall be brought in the district court of the United States for the district in which the parties so suing, or any of them, reside or have their principal place of business in the United States, or in which the vessel or cargo charged with liability is found.

3. 46 U.S.C. § 741 exempts United States vessels and cargoes from arrest or seizure; 46 U.S.C. § 781 authorizes a libel in personam in admiralty "for damages caused by a public vessel of the United States, and for compensation for towage and salvage services, including contract salvage, rendered to a public vessel of the United States."

4. 46 U.S.C. § 564:
   The master of every vessel bound from a port of the United States to any foreign port other than vessels engaged in trade between the United States and the British North American possessions, or the West India Islands, or Mexico, or of any vessel of the burden of seventy-five tons or upward, bound from a port on the Atlantic to a port on the Pacific, or vice versa, shall, before he proceeds on such voyage, make an agreement, in writing or in print, with every seaman whom he carries to sea as one of the crew, in the manner hereinafter mentioned; and every such agreement shall be, as near as may be, in the form given in the table marked A, in the schedule annexed to this chapter, and shall be dated at the time of the first signature thereof, and shall be signed by the master before any seaman signs the same, and shall contain the following particulars:
   First. The nature and, as far as practicable, the duration of the intended voyage or engagement, and the port or country at which the voyage is to terminate.
   Second. The number and description of the crew, specifying their respective employments.
   Third. The time at which each seaman is to be on board, to begin work,
   Fourth. The capacity in which each seaman is to serve.
   Fifth. The amount of wages which each seaman is to receive.
   Sixth. A scale of the provisions which are to be furnished to each seaman.
   Seventh. Any regulations as to conduct on board, and as to fines, short allowance of provisions, or other lawful punishments for misconduct, which may be sanctioned by Congress or authorized by the Commandant of the Coast Guard not contrary to or not otherwise provided for by law, which the parties agree to adopt.
   Eighth. Any stipulations in reference to advance and allotment of wages, or other matters not contrary to law.

as they affect merchant seamen. The only case within possible sailing distance of appellant's reliance on 46 U.S.C. § 564 is *Blaha v. United States,* 511 F.2d 1165 (Ct.Cl.1975), and it is entirely out of range. In *Blaha,* the members of a maritime union employed by the Department of Commerce as seamen on an ocean survey vessel brought suit against the United States. They claimed that the Secretary of Commerce had abused his discretion in refusing to pay prevailing wage rates agreed to by the union, commercial operators, and the Navy. The court held that there was an abuse of discretion. The implicated statute, however, was not 46 U.S.C. § 564, but 5 U.S.C. § 5348, which is part of the section of the United States Code denoted "Government Organization and Employees." Section 5348 of title 5 expressly provides that the pay of officers and members of crews of government operated vessels "shall be fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates and practice in the maritime industry." Nothing in the holding or language of *Blaha* even drifts toward 46 U.S.C. § 564. While the case is not even remotely apposite, its discussion of 5 U.S.C. § 5348 does launch the observation that, if the Congress had wished to impose the shipping articles requirement on crews of government operated vessels section 5348 of title 5, which was amended in 1972, would have been a particularly appropriate statute.

46 U.S.C. § 564 is in that part of the Code entitled "Merchant Seamen." Nowhere in this entire section, 46 U.S.C. §§ 541–713, is there any suggestion that it is to apply to crews of vessels operated by the United States. In fact, the language of the statute points quite clearly to exclusion of the United States. *See* 46 U.S.C. § 713 ("master," as used in § 564, defined as "every person having the command of any vessel belonging to any *citizen* of the United States" (emphasis added)). As the district court correctly found, the employment forms that appellant filled out before taking a berth on the HAYES informed him clearly that he was accepting employment, not as a traditional civil mariner, but as a federal employee. Appellant's education at the Massachusetts Maritime Academy and his work as third assistant engineer during the summer of 1972, must have made him aware of the role shipping articles play in the Merchant Marine and the significance of not signing any before going aboard the HAYES. His testimony that he did not realize that his employment by Sealift would make him a federal employee strains credulity. We hold that 46 U.S.C. § 564 does not apply to crew members employed by Sealift and affirm the district court's finding that appellant knew that his acceptance of employment by Sealift made him a federal employee.

The next issue is whether Sealift's determination that appellant deserted the HAYES in Halifax and thus forfeited his wages was justified. In making its finding that appellant deserted ship, the district court relied on Civilian Marine personnel Instructions, Exhibit H, and specifically CMPI 750.5–4(a)(b),[5] introduced in evidence by Sealift.

---

5. CMPI 750.5–4(a)(b):

5–4. SPECIAL PROCEDURES IN DESERTION CASES.—When an employee leaves a ship during a voyage without authority and with intent not to return to the ship's duties, he will normally be charged with desertion. However, in unusual circumstances, resignation, by mutual consent, from the ship and from MSC may be arranged. See CMPI 352.2 for instructions regarding mutual consent resignations. Where a mutual consent resignation or other authorized separation from the ship is not arranged, desertion will be charged when the employee leaves the ship's duties on voyage without authority and with intent not to return.

The provisions below are applicable to *all* employees charged with desertion.

*a. Policy.*—As a matter of policy, employees will not be charged with desertion when they leave their ship in the home port or its immediate environs. Instead, charge 2 or 3 of the Schedule will be used, as appropriate, and appropriate action taken. Employees may be charged with desertion when they leave the ship, with intent not to return, in United States ports other than the home port or in any foreign port.

*b. Establishment of intent required.*—Desertion must be distinguished from unauthorized absence. Desertion can be proved only if the

Appellant attacks the introduction of the CMPI regulation on three grounds: one, that they were introduced after the motion for dismissal and, therefore, violated the intent of Rule 41(b); two, they were not published in the Federal Register as required by 5 U.S.C. § 552(a)(1); and, third, that they abrogate the requirement of 46 U.S.C. § 564 for shipping articles and are, therefore, invalid. Since we have already ruled that 46 U.S.C. § 564 has no application to appellant and that shipping articles were not required, the third objection is disposed of without more.

■ The objection based on the violation of Rule 41(b) might be persuasive had it been made to the district court and overruled. It is clear that a Rule 41(b) motion for dismissal must be predicated upon the state of the evidence as presented by the plaintiff. The rule, in pertinent part, provides:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.

intent not to return to the ship's duties is established by a preponderance of the evidence. For example:

(1) A seaman who advises his superior or other crew members that he is quitting and departs the ship with his gear may be charged with desertion.

(2) A seaman who submits a written resignation while on voyage and departs the ship without authority thereby established a prima facie case of desertion.

\*  \*  \*  \*  \*  \*

\* (3) \* On the other hand, a seaman who is able to demonstrate that he suffered cruel treatment or possessed a just fear for his personal safety would defeat a charge of desertion. So also would a seaman who had been detained ashore against his will. \* Further, an apparent deserter who returns to the ship during the voyage requesting restoration to active duty will be restored to duty in the crew, except that the Master may refuse to restore the employee to duty if a replacement has been hired by the ship or if the employee's presence aboard would jeopardize the

Strictly speaking, the CMPI regulation was not offered in evidence by defendant until after the motion to dismiss was made, although they were marked for identification at the outset of the trial. But plaintiff never objected to their admission on the basis of Rule 41(b). When asked by the court as to the basis for his objection to the regulations, plaintiff's counsel specified the following grounds: lack of proper authentication (no seal), no entry in the ship's log of desertion, that the rules abrogated 46 U.S.C. § 564, and that they were never published in the Federal Register. There was no suggestion by plaintiff at the trial that introduction of the regulations violated Rule 41(b). Furthermore, counsel were given an opportunity to file briefs on the motion for dismissal, and no mention was made in plaintiff's brief of this evidence transgressing the purpose of Rule 41(b). We think it, therefore, clear that appellant has effectively waived this objection. If the evidence had been properly objected to, defendant would have had an opportunity to withdraw his Rule 41(b) motion and proceed to put in evidence. The regulations were clearly admissible as pertinent and relevant evidence.

■ Appellant's reliance on failure to publish the regulations in the Federal Register pursuant to 5 U.S.C. § 552(a)(1)[6] as

safety of the ship, her passengers, personnel, cargo or equipment. If the employee is restored, any pending desertion charges will be cancelled and other appropriate action substituted. (See CMPI 630.4–3b.) \*

**6.** 5 U.S.C. § 552 reads as follows:

(a) Each agency shall make available to the public information as follows:

(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

(A) descriptions of its central and field organization and the established places at which, the employees (and in the case of a uniformed service, the members) from whom, and the methods whereby, the public may obtain information, make submittals or requests, or obtain decisions;

(B) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;

invalidating the regulations is grasping at a straw. The purpose of publication in the Federal Register is public guidance. An examination of the statute makes it clear that it cannot be a basis here for either invalidating the regulations or excluding them from evidence.

█ The next question is whether appellant knew or should have known that leaving the ship in Halifax would make him a deserter. Appellant argues that, since he did not sign any shipping articles, he was free to leave the ship at any port. This, of course, begs the question. The evidence shows that, after appellant wrote his "To Whom It May Concern" letter announcing his intention to leave the ship at the next port, there were discussions with him by both the Master and Chief Engineer, and he was made aware that his departure from the ship upon arrival in Halifax would constitute a disciplinary offense.[7] Plaintiff's Exhibit 10. While there is no evidence that appellant was explicitly informed that leaving ship was an act of desertion or that his attention was drawn to the pertinent CMPI regulation, we think notice that his action would constitute a disciplinary offense was sufficient to anchor the finding of desertion and loss of pay. Appellant was not a callow youth whose seafaring dreams were suddenly shattered by the realities of life in the foc'sle. When he shipped aboard the HAYES, he had two years of law school behind him and was a graduate of the Massachusetts Maritime Academy. He must have known that an engineering officer cannot simply jump ship without incurring serious consequences. We find it significant, as did the district court, that by the

time the HAYES reached Halifax, appellant had earned more than enough, $3,000 to $3,500, to pay for his last two semesters at law school and that he did reenter law school in September and complete his final two semesters. We affirm the finding of the district court that the reason advanced by appellant for leaving the ship, i. e., a sudden reduction in overtime is overborne by the facts.

Our ruling on the desertion question also disposes of the libel count.

█ While we think our rulings and findings adequately cover all the facets of the case, we briefly discuss appellant's claim that the district court erred in excluding evidence of an MEBA[8] agreement that would have shown a great disparity in rates of pay between engineers on government vessels and those serving on civilian ships contrary to 5 U.S.C. § 5348. The district court in excluding this evidence noted that appellant began work with Sealift the day after the MEBA agreement expired and found it limited to private shippers. We add that the complaint is not based on any alleged violation of 5 U.S.C. § 5348 as was *Blaha v. United States, supra,* 511 F.2d 1165. The first count of the complaint asks for the earned wages for the last eighteen days of appellant's employment in the specific amount of $1,116.57, plus a lump sum for unused leave, plus interest. The count is based specifically on the employment contract. The second count, as already noted, is a tort count for libel and obviously has nothing to do with 5 U.S.C. § 5348.

*Affirmed.*

(C) rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;

(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and·

(E) each amendment, revision, or repeal of the foregoing.

7. Appellees assert in their brief at page 14 that the deposition of the Chief Engineer shows that he told appellant of being charged with desertion and forfeiting back pay and that copies of the CMPI's were available on board the vessel.

This overlooks the fact that appellees did not put the entire deposition in evidence and, therefore, only those selected portions introduced by the plaintiff are properly before us. None of these pages substantiates appellees' claim as to what the Chief Engineer told appellant.

8. Presumably the initials stand for Marine Engineers Brotherhood Association.