**Sharon D. WELCH, et al., Plaintiffs, Appellants,**

v.

**UNITED STATES of America, Defendant, Appellee.**

No. 84–1131.

United States Court of Appeals, First Circuit.

Argued Aug. 6, 1984.

Decided Jan. 4, 1985.

David L. Kelston, Boston, Mass., with whom Nancy Gertner, Silverglate, Gertner, Baker & Fine, and John Reinstein, Civil Liberties Union of Massachusetts, Boston, Mass., were on brief, for appellants.

Elaine F. Ferris, Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., with whom William F. Weld, U.S. Atty., Boston, Mass., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Sec., and Gary R. Allen, Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., were on brief, for appellee.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and PEREZ–GIMENEZ,* District Judge.

PEREZ–GIMENEZ, District Judge.

This is an appeal from an order of the United States District Court for the District of Massachusetts, dismissing with prejudice plaintiffs' tax refund suit because the complaint failed to state a claim upon which relief could be granted. The appeal presents questions about the constitutionality of a new tax statute, 26 U.S.C. § 6702,[1]

---

* Of the District of Puerto Rico, sitting by designation.

1. Section 6702 provides:
    (a) Civil penalty.—If—
    (1) any individual files what purports to be a return of the tax imposed by subtitle A but which—

(A) does not contain information on which the substantial correctness of the self assessment may be judged, or
(B) contains information that on its face indicates that the self-assessment is substantially incorrect; and
(2) the conduct referred to in paragraph (1) is due to—

and about the legality of the procedures employed by the IRS in assessing and imposing the penalty provided therein. For the reasons stated herein, we affirm the order of the district court.

## I.

The relevant facts may be summarized as follows. Plaintiff taxpayers (Sharon S. Welch, Larry Goldsmith and Christopher J. Lenney) each filed a 1982 federal income tax return (Form 1040) on which the amount of his or her reported total tax liability was reduced by a credit claimed on line 48,[2] which represented an estimate of the proportion of taxes to be expended by the United States Government for military purposes. Taxpayer Welch claimed a "war tax credit" in the amount of $1250 on line 48 of her return and attached a letter to the return stating that because of her opposition to war and her religious faith she could not help finance the production and deployment of nuclear and conventional weapons. Welch thus claimed the war tax credit of $1250, "a figure that represents the 52% of our taxes that goes to the military," stating that she would donate her refund to a non-profit charitable organization. Taxpayer Goldsmith claimed a credit of $251.32 on line 48 of his return for alleged "government war crimes." Attached to Goldsmith's return was a letter stating that "[a]s an act of protest against

U.S. Militarism, I am deducting the 61 percent 'war tax' from my 1982 federal income tax," and requesting that the balance of his income tax be put to peaceful uses. Taxpayer Lenney claimed a "war tax credit" of $490.50 on line 48 of his return, stating that the same was "[n]ot a legitimate expense, but a refusal to pay for a suicidal arms race which threatens all earthly life. Reduces tax by 50%." Lenney also attached a letter to his return explaining that the credit claimed on line 48 represented his opposition to the expenditure of tax dollars on nuclear weapons. Since in each case the return reported withholding in an amount that exceeded the total tax liability reported on line 59 of Form 1040, each of the taxpayers claimed a refund on line 69 of his or her return. Welch claimed a refund in the amount of $1795.12, Goldsmith claimed a refund in the amount of $360.06, and Lenney claimed a refund in the amount of $493.46.[3]

In August 1983, the Internal Revenue Service ("IRS") assessed a $500 penalty against each of the taxpayers pursuant to Section 6702 of the Internal Revenue Code of 1954 ("IRC"), 26 U.S.C. § 6702, for filing "frivolous" income tax returns. Each of the taxpayers thereafter paid 15 percent of the penalty ($75) and filed a request for a refund of this money and abatement of the remainder of the penalty with the IRS pur-

---

(A) a position which is frivolous, or
(B) a desire (which appears on the purported return) to delay or impede the administration of Federal income tax laws,
then such individual shall pay a penalty of $500.
(b) Penalty in addition to other penalties.— The penalty imposed by subsection (a) shall be in addition to any other penalty provided by law.

**2.** Line 48, as set forth on the 1982 Form 1040, called for "other credits" and directed taxpayers to page 14 of the Form 1040 General Instructions booklet for a description of the credits which could be claimed thereunder. Those credits were (a) the alcohol fuel credit for straight alcohol sold at retail or used as fuel in a trade or business (Internal Revenue Code, Section 44E); (b) the credit for producing fuel from a nonconventional source (IRC, Section 44D); and (c) the credit for research and experi-

mental expenditures paid or incurred in carrying on a trade or business (IRC, Section 44F).

**3.** Each taxpayer would have been, in any event, entitled to a refund because the amount of employer withholding exceeded the total tax liability in each case as computed through line 40 of their returns. Welch computed her taxes due at $2,040.00 and stated her taxes withheld as $2,945.12. She thus would have been entitled to a refund of $905.12. Goldsmith computed his taxes due at $412.00 and stated his taxes withheld as $520.74. He thus would have been entitled to a refund of $108.74. Lenney computed his taxes due at $981.00 and stated his taxes withheld as $983.96. He thus would have been entitled to a refund of $2.96. However, because each taxpayer claimed a "war tax" credit, the amount of the refund claimed was larger than it otherwise would have been.

suant to 26 U.S.C. § 6703(c)(1).[4]  When the IRS denied the taxpayers' claims, they brought this suit for refund in the district court pursuant to 26 U.S.C. § 6703(c)(2) to challenge the imposition of the $500 civil penalty assessed against them by the IRS.[5] Taxpayers claimed in the complaint that Section 6702 does not apply to the returns that they filed and that the penalty was assessed and collected in violation of the Administrative Procedure Act, 5 U.S.C. §§ 552 and 706(2)(D) "in that it is based on agency guidelines that have not been published in the Federal Register."  In the alternative, if the statute had been properly applied to them, taxpayers urged that Section 6702 violates their First Amendment rights of freedom of expression, freedom of religion, freedom to petition the government for redress of grievances, and freedom of conscience; and that Section 6702 violates their Fifth Amendment right to due process, because the statute is unconstitutionally vague and arbitrary, and to equal protection of the laws, because it subjects them to a penalty not imposed on other similarly situated individuals.

The Government moved the district court to dismiss the complaint with prejudice on the ground that the complaint failed to state a claim upon which relief could be granted.  F.R.Civ.P. 12(b)(6).[6]  The district court granted the Government's motion to dismiss sustaining the constitutionality of the penalty provision and holding that the statutory conditions for imposition of the penalty were satisfied.  Specifically, the district court held (1) that Section 6702 applies to the returns filed by the taxpayers herein;  (2) that the statute did not penalize them for the expression of political, moral or religious beliefs, but for filing legally incorrect returns which showed reduced taxes due because of the taxpayers' claims of unallowable credits;  (3) that the statute is neither vague nor overbroad;  (4) that the assessment of a Section 6702 penalty does not implicate any due process or equal protection rights;  and (5) that the assessment of the penalty against the taxpayers herein was not based on secret agency guidelines.  The district court thus concluded that the assessment of the penalty against the taxpayers was based on a statute enacted by Congress which is rationally related to a legitimate governmental interest, namely, to deter the filing of legally incorrect tax returns, and dismissed taxpayers' suit.  This appeal followed.

4. Section 6703(c)(1) provides, in pertinent part:
   (c) Extension of Period of Collection Where Person Pays 15 Percent of Penalty.—
      (1) In general.—If, within 30 days after the day on which notice and demand of any penalty under section 6700, 6701, or 6702 is made against any person, such person pays an amount which is not less than 15 percent of the amount of such penalty and files a claim for refund of the amount so paid, no levy or proceeding in court for the collection of the remainder of such penalty shall be made, begun, or prosecuted until the final resolution of a proceeding begun as provided in paragraph (2)....

5. Section 6703(c)(2) provides:
      (2) Person must bring suit in district court to determine his liability for penalty.—If, within 30 days after the day on which his claim for refund of any partial payment of any penalty under section 6700, 6701, or 6702 is denied (or, if earlier, within 30 days after the expiration of 6 months after the day on which he filed the claim for refund), the person fails to begin a proceeding in the appro-

priate United States district court for the determination of his liability for such penalty, paragraph (1) shall cease to apply with respect to such penalty, effective on the day following the close of the applicable 30-day period referred to in this paragraph.

6. Concurrently with the complaint, plaintiffs filed copies of their 1982 income tax returns and other materials, and both the defendant in its motion to dismiss and the district court in its memorandum opinion made reference to said materials.  It has been held that materials filed concurrently with the complaint are sufficient to convert the motion to dismiss into one for summary judgment. *General Guaranty Insurance Co., v. Parkerson,* 369 F.2d 821 (5th Cir. 1966).  *See also,* 5 Wright & Miller, Federal Practice and Procedure:  Civil § 1366 note 62 and cases cited therein.

   Thus, the government's motion to dismiss for failure to state a claim was effectively converted into a motion for summary judgment because matters outside the pleadings were presented to and accepted by the district court.  *See* Fed.R. Civ.P. 12(b).

## II.

On appeal, the taxpayers claim that the district court erred in dismissing three of their claims, to wit: (1) that Section 6702 violates their First Amendment rights to freedom of speech, free exercise of religion and the right to petition the government for the redress of grievances; (2) that the application of the statute to their returns violates the Freedom of Information Act; and (3) that the statute is unconstitutionally vague. Before we address taxpayers' contentions, we believe that we should address the question whether Section 6702 was properly applied to taxpayers' returns. Although taxpayers did not include this as one of the questions presented for review, we agree with the Government that the taxpayers appear, at various points in their brief, to have renewed their contention below that their returns do not fall within the scope of Section 6702.

### A. *Applicability of Section 6702*

Section 6702 of the Internal Revenue Code of 1954, applicable with respect to returns filed after September 3, 1982, was enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97–248, 96 Stat. 324, in order to improve compliance with the federal tax laws. *See,* S.Rep. No. 494, 97th Cong., 2d Sess. 74, 277, *reprinted in* 1982 U.S.Code Cong. & Ad.News 781, 1023–25. The provision was enacted in response to the "rapid growth in deliberate defiance of the tax laws by tax protestors." As the Senate Finance Committee explained:

> [t]he committee is concerned with the rapid growth in deliberate defiance of the tax laws by tax protestors. The Internal Revenue Service had 13,600 illegal protest returns under examination as of June 30, 1981. Many of these protestors are induced to file protest returns through the criminal conduct of others. These advisors frequently emphasize the lack of any penalty when sufficient tax has been withheld from wages and encourage others to play the "audit lottery." The committee believes that an immediately assessable penalty on the filing of protest returns will help deter the filing of such returns, and will demonstrate the determination of the Congress to maintain the integrity of the income tax system.

S.Rep. No. 494, *supra,* at 277, *reprinted in* 1982 U.S.Code Cong. & Ad.News at 1023–24. The congressional draftsmen of Section 6702 noted that, under existing law, a taxpayer who files a protest return was potentially subject to other civil penalties, such as the penalty for failure to file under IRC Section 6651(a), the 5 percent negligence penalty under IRC Section 6653(a) and the penalty for fraud under IRC Section 6653(b). However, the draftsmen concluded that limitations in the amounts of such penalties, as well as the delays in their imposition, had rendered those penalties ineffective as deterrents to the filing of tax protest returns.

Thus, to protect the "integrity of the income tax system" Congress added Section 6702 to the Internal Revenue Code, which provides for the immediate assessment of a civil penalty of $500 against taxpayers filing tax protest documents. The Section 6702 penalty can be imposed upon any taxpayer who (1) files a purported return that fails to contain information from which the correctness of the reported tax liability can be determined or that clearly indicates that the tax liability shown is substantially incorrect, Section 6702(a)(1), and (2) does so in furtherance of a frivolous position or a *prima facie* intent to delay or impede the administration of the federal income tax laws. Section 6702(a)(2). According to the Senate Finance Committee Report, the penalty is intended to attack a great variety of tax protest activities. Specifically, the Committee emphasized in its report that

> the penalty could be imposed against any individual filing a "return" showing an incorrect tax due, *or a reduced tax due, because of the individual's claim of a clearly unallowable deduction, such as a . . . "war tax" deduction under which the taxpayer reduces his taxable income or shows a reduced tax due by*

*that individual's estimate of the amount of his taxes going to the Defense Department budget, etc.*

S.Rep. No. 494, *supra,* at 278, *reprinted in,* 1982 U.S.Code Cong. & Ad.News at 1024.

■ Turning to the case at bar, we cannot escape the conclusion that, in light of the above cited legislative history and the plain language of the statute, there can be no doubt that the 1982 returns filed by the plaintiff taxpayers fall clearly within the scope of Section 6702, *i.e.,* that the taxpayers' "actions are precisely those that Congress intended the statute to reach." *Franklet v. United States,* 578 F.Supp. 1552, 1554–55 (N.D.Cal.1984) (a Section 6702 "war tax" case). *Accord, Drefchinski v. Regan,* 589 F.Supp. 1516 (W.D.La. 1984); *Harper v. United States,* 587 F.Supp. 1056 (E.D.Pa.1984). *But see, Jenney v. United States,* 581 F.Supp. 1309 (C.D.Cal.1984) (district court held that the taxpayers' self-assessment was not incorrect where the tax liability was reduced by a "conscience deduction"—similar to the "war tax" credits claimed by taxpayers herein—because the taxpayers had attached a letter to their return which stated what the correct amount of tax would have been had they not claimed the deduction). To begin with, each of the taxpayers *reduced* the amount of his or her total tax liability reported on their returns by claiming a "war tax" credit in the amount of 52 percent, 61 percent or 51 percent of his or her total tax liability. By claiming said "war tax" credits, taxpayers represented

that they owed less than their actual tax liability and that they were entitled to a refund considerably larger than that owed them. We believe that Judge Schwarzer's words in *Franklet,* 578 F.Supp., at 1555, to the effect that "[w]hatever other meaning may be attributed to the term 'self-assessment,' it clearly includes a taxpayer's representations on the return as to the tax due or refund claimed," are plainly applicable to the returns at issue in this case. Each of the returns filed by the taxpayers herein was incorrect in its statement of allowable credits, the total tax liability and the amount to be refunded. Therefore, since taxpayers' returns showed a "reduced tax due because of the [taxpayers'] claim of a clearly unallowable deduction,"[7] they plainly contain information that on its face indicates that the self-assessments are substantially incorrect, and satisfy Section 6702(a)(1)(B).

■ Furthermore, taxpayers' 1982 income tax returns also satisfy the second criterion for imposition of the Section 6702 penalty. The incorrectness of taxpayers' returns results here from their adoption of positions which are "frivolous" within the meaning of the statute, *i.e.,* that their total tax liability could be reduced by their estimate of the amount of their taxes that would be used for military purposes. It is a well established principle of tax law that deductions and credits are a matter of legislative grace, and unless Congress provides for a deduction or a credit in the law, it is not allowable. *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440, 54 S.Ct.

---

**7.** Although taxpayers admit in their brief that the Senate Finance Committee Report is clear in expressing the intent to penalize "protest returns" containing unallowable deductions, they seem to suggest that a distinction should be drawn between unallowable deductions and unallowable credits. Appellants' brief, at 42 and note. However, the same report makes it clear that deductions and credits are to be given identical treatment under Section 6702. In singling out "war tax" claims as an example of the kind of frivolous position that would warrant imposition of the Section 6702 penalty, the Committee expressly indicated that it would apply to a return that claims a " 'war tax' deduction under which the taxpayer reduces his taxable income

*or shows a reduced tax due* by that individual's estimate of the amount of his taxes going to the Defense Department budget...." S.Rep. No. 494, *supra,* at 278, *reprinted in* 1982 U.S.Code Cong. & Ad.News at 1024 (emphasis added). Accordingly, the "self-assessment" is incorrect within the meaning of Section 6702 regardless of whether the taxpayer has claimed a "war tax" deduction or a "war tax" credit. See, e.g., *Franklet v. United States, supra,* in which several of the plaintiff taxpayers had claimed "war tax" deductions whereas others claimed "war tax" credits, and the district court sustained the imposition of the Section 6702 penalty against all of them.

788, 790, 78 L.Ed. 1348 (1934). There is no provision in the Internal Revenue Code that provides a credit or deduction based on a taxpayer's disagreement with the uses to which tax payments will be put. So, basically, since taxpayers can point to no provision in the Code that provides for a "war tax" credit, they are not entitled to such a credit.[8]

Moreover, a long and unbroken line of cases has established that such "war tax" claims are impermissible and can be disallowed. *See, e.g., Lull v. Commissioner,* 602 F.2d 1166 (4th Cir.1979), *cert. denied,* 444 U.S. 1014, 100 S.Ct. 664, 62 L.Ed.2d 643 (1980); *Graves v. Commissioner,* 579 F.2d 392, 393–94 (6th Cir.1978), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1423, 59 L.Ed.2d 634 (1979); *First v. Commissioner,* 547 F.2d 45, 46 (7th Cir.1976) (*per curiam* ); *Antenrieth v. Cullen,* 418 F.2d 586, 588–89 (9th Cir.1969), *cert. denied,* 397 U.S. 1036, 90 S.Ct. 1353, 25 L.Ed.2d 647 (1970). In a recent opinion, the United States Supreme Court laid to rest whatever possible remaining basis there might have been for claiming that tax liability could be reduced because of a sincerely held, conscientious objection to the uses to which taxes are put. *See, United States v. Lee,* 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982). In the *Lee* case, a member of the Old Order Amish sought to avoid the payment of social security taxes on the basis of his religiously based opposition to the social security system. In that case, as in the one at bar, there was no question raised as to the sincerity of the taxpayer's religious convictions. However, the court held that "religious belief in conflict with the payment of taxes affords no basis for resisting the tax," 455 U.S. at 260, 102 S.Ct. at 1056, in view of the important public interest in maintaining a sound tax system. In reaching its conclusion, the court expressed some thoughts which we deem particularly applicable to the instant case. The court stated, albeit in dicta, that:

... it would be difficult to accommodate the comprehensive social security system with myriad exemptions flowing from a wide variety of religious beliefs.... There is no principled way ... to distinguish between general taxes and those imposed under the Social Security Act. If, for example, a religious adherent believes war is a sin, and if a certain percentage of the federal budget can be identified as devoted to war-related activities, such individuals would have a similarly valid claim to be exempt from paying that percentage of the income tax. *The tax system could not function if denominations were allowed to challenge the tax system because tax payments were spent in a manner that violates their religious belief.*

*Id.,* (emphasis added) (citing *Lull v. Commissioner, supra; Autenrieth v. Cullen, supra* ). The Supreme Court thus made it clear that a taxpayer cannot avoid payment of income taxes based on his conscientious opposition to war or defense spending.

Finally, any lingering doubt as to whether Congress intended the Section 6702 penalty to apply to claims like the taxpayers' bid for "war tax" credits, is dispelled by the legislative history quoted above. *See, supra,* p. 1105. As previously noted, such "war tax" claims were specifically identified by the Senate Finance Committee as examples of the type of frivolous objection to the tax laws that would warrant the imposition of the penalty. S.Rep. No. 494, *supra,* at 278, *reprinted in* 1982 U.S.Code Cong. & Ad.News at 1024.

Thus, it is clear that by claiming such a patently improper credit, and thereby reducing their total tax liability, each of the taxpayers plainly filed a return containing "information that on its face indicates that the self-assessment is substantially incorrect," Section 6702(a)(1)(B), and did so in furtherance of "a position which is frivolous", Section 6702(b)(2)(A). Taxpayers' returns fall squarely within the scope of Section 6702. *Accord Drefchinski v. Regan,*

---

**8.** We also note here that taxpayers claimed their "war tax" credits on line 48 of their returns, a line which called for entirely different credits. *See* note 1, *supra.*

*supra; Harper v. United States, supra; Franklet v. United States, supra.* We will review now taxpayers' challenges to the imposition of the penalty based on the First Amendment, the Freedom of Information Act and the doctrine of vagueness.

## B. *First Amendment Claims*

Taxpayers argue that Section 6702 abridges their First Amendment freedoms of speech and religion and their right to petition the government for a redress of grievances.[9] In essence, taxpayers allege that the Section 6702 penalty was imposed against them solely for having incorporated into their 1982 income tax returns a written protest against the government's military expenditures, *i.e.,* for using their tax forms to express to the government their dissenting opinions on war and nuclear weapons. Thus, they maintain that the Section 6702 penalty imposes a burden on political speech and the beliefs underlying that speech.

■ We agree with the district court that taxpayers were not penalized for expressing their political, moral or religious beliefs on their returns, or for attaching letters to their returns stating their opposition to military spending. Instead, as we explained above, the Section 6702 penalty was assessed against them simply because they filed returns containing substantially incorrect self-assessments based on clearly unallowable credits for "war taxes". *Accord Drefchinski v. Regan,* 589 F.Supp. at 1526. In other words, the penalty was imposed because taxpayers' conduct failed to comply with the requirement of the federal tax laws that they properly report their tax liability in accordance with the applicable provisions of the Internal Revenue Code.

■ As the Government correctly stated in its brief, noncompliance with the federal tax laws is conduct that is afforded no protection under the First Amendment. *See, United States v. Malinowski,* 472 F.2d

850, 857–58 (3d Cir.), *cert. denied,* 411 U.S. 970, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973). *Accord Franklet v. United States,* 518 F.Supp. at 1557 ("Plaintiffs' attempt to transform a sincere belief in the moral rectitude of their vision of what the polity should be into absolution for flouting the laws of the polity that exists is not shielded by the First Amendment"). In *Malinowski,* the taxpayer claimed exemptions to which he was not entitled in order to protest military spending in connection with the Vietnam War. Malinowski was charged with the criminal offense of willfully supplying false or fraudulent information to his employer, despite the fact that he had notified his employer of the political basis for the claimed exemptions. The taxpayer argued as a defense that his conduct constituted symbolic speech that could not be criminally penalized because it was protected by the First Amendment. The Court of Appeals for the Third Circuit rejected said defense stating:

> To urge that violating a federal law which has a direct or indirect bearing on the object of the protest is conduct protected by the First Amendment is to endorse a concept having no precedent in any form of organized society where standards of societal conduct are promulgated by some authority....
>
> Thus posited, appellant's First Amendment argument is but a suggestion that a member of society can be absolved of the responsibility for obeying a given law ... if he can prove a sincere, abiding, and good faith objection to the direct or indirect object of that law. Such a position represents a feeble effort to emasculate basic principles of civil disobedience, and, simply stated, is invalid. Here, the actor wants the best of both worlds; to disobey, yet be absolved of punishment for disobedience.

*Malinowski,* 472 F.2d at 857.

■ Moreover, even if taxpayers' attempts to reduce their taxes were treated

---

**9.** First Amendment challenges to Section 6702 have been consistently rejected by the courts. *See, e.g., Franklet v. United States,* 578 F.Supp. at 1556–57; *Drefchinski v. Regan,* 589 F.Supp. at

1524–27; *Harper v. United States,* 587 F.Supp. at 1058; *Bearden v. Commissioner,* 575 F.Supp. 1459 (D.Utah 1983).

as expressive activity protected by the First Amendment, it is clear that the necessities of maintaining a sound revenue system raise a compelling governmental interest adequate to override this fundamental right. *See, United States v. Lee,* 455 U.S. at 259–60, 102 S.Ct. at 1056; *United States v. Malinowski,* 472 F.2d at 857–58; *Autenrieth v. Cullen,* 418 F.2d at 588–89; *Franklet v. United States,* 578 F.Supp. at 1556; *Drefchinski v. Regan,* 589 F.Supp. at 1526; *Harper v. United States,* 587 F.Supp. at 1058. In situations like the one at bar, where "speech" and "non-speech" elements are combined in the same course of conduct, the Supreme Court of the United States has held that "a sufficiently important governmental interest in regulating the non-speech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien,* 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968). Under *O'Brien,* a statute is sufficiently justified if (1) it is within the constitutional power of the Government; (2) it furthers an important or substantial governmental interest; (3) the governmental interest is unrelated to the suppression of free expression; and (4) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. 391 U.S. at 377, 88 S.Ct. at 1679. We find that Section 6702 meets all of these requirements, and consequently, that taxpayers can be constitutionally penalized under it.

First, there is no doubt that Section 6702 falls squarely within the Government's power to lay and collect taxes on income under the Sixteenth Amendment. Second, the interests served by Section 6702 are important and substantial. The statute's legislative history, quoted extensively above, demonstrates that Congress was concerned with the substantial and growing interference with the effective functioning of the revenue system created by frivolous tax returns such as the ones at bar. *See,* S.Rep., *supra,* at 277, *reprinted in* 1982. U.S.Code Cong. & Ad.News at 1023–24. There can be no doubt that "the broad public interest in maintaining a sound tax system is of ... a high order." *United States v. Lee,* 455 U.S. at 260, 102 S.Ct. at 1056. This interest in preserving the integrity of the income tax system is similar to the interest in a smoothly functioning system for raising armies, which the Supreme Court found to be compelling in *O'Brien.* 391 U.S. at 377–81, 88 S.Ct. at 1679–81. Third, while the legislative history of Section 6702 reveals that Congress was concerned with the increasing number of "tax protest" returns being filed, the underlying concern was that increased filing of frivolous returns would jeopardize the tax collection system and is thus unrelated to suppression of free speech. *Cf. O'Brien,* 391 U.S. at 385–86, 88 S.Ct. at 1683–84. Finally, Section 6702 is narrowly drawn to further the governmental interest without unnecessary intrusion on freedom of expression. The penalty applies only to the particular noncommunicative aspect of taxpayers' conduct that threatens the integrity of the income tax system, *i.e.,* the filing of "protest tax" returns containing improper and unallowable credits. *Cf. O'Brien,* 391 U.S. at 381–82, 88 S.Ct. at 1681–82. Moreover, "Section 6702 provides a modest and closely focused deterrent against precisely the behavior Congress legitimately sought to deter and does not inhibit resort to other more direct and effective avenues of expression." *Franklet v. United States,* 578 F.Supp. at 1557. Taxpayers, for example, remain free to express their objections to the collection of taxes for military spending by attaching a letter of protest to their returns, as they did in this case. Section 6702, therefore, does not deprive the taxpayers of their right to free speech guaranteed by the First Amendment.

Taxpayers' contention that the Section 6702 penalty impermissibly burdens their First Amendment right to the free exercise of religion also fails. As discussed above, the Supreme Court has held that the necessities of revenue collection under statutes of general applicability raise governmental interests sufficiently compelling to outweigh the free exercise rights of those who

find the tax objectionable on bona fide religious grounds. *United States v. Lee,* 455 U.S. at 260, 102 S.Ct. at 1056 ("[b]ecause the broad public interest in maintaining a sound tax system is of such a high order, religious beliefs in conflict with the payment of taxes affords no basis for resisting the tax"). Thus, taxpayers' religious beliefs cannot excuse them from their responsibility to represent their tax liability in accordance with positions having legal merit. Section 6702 does not violate taxpayers' right to freedom of religion guaranteed by the First Amendment.

■ Finally, taxpayers' claim that Section 6702 violates the right to petition the government for redress of grievances guaranteed to them by the First Amendment is also meritless. Regarding this claim, we believe that it is sufficient to point out that penalizing an individual who seeks to claim frivolous tax deductions in no way hinders that individual from complaining to any government official about the way those taxes are spent. *See, e.g., Cupp v. Commissioner,* 65 T.C. 68, 83–84 (1975), *aff'd,* 559 F.2d 1207 (3d Cir.1977). Section 6702 does not preclude taxpayers from expressing their views to the IRS or other agencies of the Executive Branch, to the Legislative Branch or to the Judicial Branch. We now turn to taxpayers' claims based on the Freedom of Information Act (FOIA).

## C. *Freedom of Information Act Claim*

Taxpayers next argue that the IRS impermissibly relied on unpublished or otherwise publicly unavailable interpretative guidelines in assessing the Section 6702 penalty against them, in violation of the

Freedom of Information provisions of the Administrative Procedure Act ("APA"), specifically 5 U.S.C. § 552(a)(1)(D) and § 552(a)(2).[10] Taxpayers allege that if the IRS had disclosed the purported interpretative guidelines for Section 6702, they would have been on notice as to what the law required and could have chosen to conform their tax returns thereto. Consequently, taxpayers urge that the alleged violation of the publication and/or public availability requirements of the FOIA renders Section 6702 inapplicable as to them and requires rescission of the penalty imposed against them.

■ Taxpayers' FOIA claim has no merit in this case. Here, as in *Franklet v. United States,* the "assessment of the [Section 6702] penalty on [taxpayers] is no more than the direct application of the plain terms of the statute supported by unambiguous legislative history." 578 F.Supp. at 1558. As we demonstrated above, the assessment was made against the taxpayers simply because they filed 1982 tax returns which fit squarely within Section 6702. We agree with Judge Schwarzer that no administrative guidelines were necessary prior to assessment of the penalty. *Id.* The IRS was simply following the words of the statute, with the additional guidance of the Senate Report, when it assessed the penalty against taxpayers herein. All information relied on by the IRS was available to taxpayers well before they filed their returns, and thus they should have known that their actions would subject them to the statutory penalty. Hence, even if the IRS relied on interpretations of the statute that should have been published or made public-

10. On one hand, the Act requires in Section 552(a)(1)(D) publication in the Federal Register of "substantive rules of general applicability as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency." On the other hand, in Section 552(a)(2) availability for public inspection, not publication, is required for "those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register," § 552(a)(2)(B), and for "administrative staff manuals and instructions to staff that affect a

member of the public." § 552(a)(2)(C). The Act further provides that a person may not be adversely affected by a matter required to be published and not so published, unless that person has actual notice of the terms thereof, § 552(a)(1), and that a statement of policy, interpretation, staff manual or instruction that affects a member of the public may not be relied on, used, or cited as precedent by an agency unless it has been made available or published, or the person has actual notice of the terms thereof. § 552(a)(2).

ly available, this fact will not cure the defect in taxpayers' filing, *i.e.*, the substantially incorrect self-assessments based on the frivolous position that they are entitled to "war tax" credits.

As pointed out in *Franklet*, even assuming that relevant IRS interpretative guidelines for Section 6702 existed, it is by no means certain that the FOIA or the APA would require their publication, much less that nonpublication would nullify the penalty. 578 F.Supp. at 1558; *Drefchinski v. Regan*, 589 F.Supp. at 1522. This Court has previously recognized that the failure to publish in the Federal Register does not automatically invalidate an administrative regulation or guideline. *Donovan v. Wollaston Alloys, Inc.*, 695 F.2d 1, 9 (1st Cir. 1982); *Pitts v. United States*, 599 F.2d 1103, 1107–08 (1st Cir.1979). The Ninth Circuit has held that publication of an administrative interpretative guideline is not required when "(1) only a clarification or explanation of existing laws or regulations is expressed; and (2) no significant impact upon any segment of the public results." *Powderly v. Schweiker*, 704 F.2d 1092, 1098 (9th Cir.1983); *Anderson v. Butz*, 550 F.2d 459, 462–63 (9th Cir.1977). Judge Schwarzer aptly observed that "any interpretation of § 6702 applicable to plaintiffs would only reiterate Congress's plainly expressed intent that 'war tax' reductions be considered 'frivolous.'" *Franklet v. United States*, 578 F.Supp. at 1558. Thus, any interpretative guidelines which could have been relied on by the IRS would at best merely serve to clarify Section 6702 and would occasion absolutely no change in taxpayers' substantive rights under Section 6702. Similarly, we see no basis upon which it can be said that taxpayers were "adversely affected" by any unpublished or otherwise publicly unavailable IRS interpretative guidelines for Section 6702. *See Donovan v. Wollaston Alloys, Inc.*, 695 F.2d at 9–10.

It seems doubtful that Section 552(a)(2), which requires that certain materials be made available for public inspection and copying, would apply to any IRS interpretative guidelines created for Section 6702.

Even if Section 552(a)(2) were applicable, however, we do not believe that the unavailability of interpretative guidelines that say no more than the statute will be applied by its own terms should foreclose the IRS from enforcing the statutory penalty. Given the clarity with which the statute and its published legislative history speak, any interpretative guidelines dealing with "war tax" claimants could not be said to directly "affect[ ] a member of the public" nor could it be said to have been "relied on, used, or cited as precedent." Section 552(a)(2).

The purpose of the publication requirement of Section 552(a)(1) and the availability requirement of Section 552(a)(2) is public guidance and notice, *see Pitts*, 599 F.2d at 1108. In our view, the statute and its accompanying legislative history gave the taxpayers clear notice and guidance regarding the consequences of claiming a "war tax" credit. The taxpayers cannot now avoid responsibility for their actions by claiming technical noncompliance with a statute when that alleged noncompliance could not prejudice them in any way. We thus conclude that failure to publish or make available any interpretative guidelines which may have been utilized by the IRS would not be a defense to imposition of the penalty provided under Section 6702.

#### D. *Vagueness*

Taxpayers' final contention that Section 6702 is unconstitutionally void for vagueness is also lacking in merit. Initially, we believe that taxpayers lack the required standing to raise the claim of unconstitutional vagueness. The United States Supreme Court has emphasized that a litigant seeking to challenge a statute for vagueness must demonstrate that the statute is vague as applied to his own conduct, regardless of its potentially vague application to others. *See Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982); *Parker v. Levy*, 417 U.S. 733, 756 (1974); *Civil Service Commission v. Letter Carriers*, 413 U.S. 548, 579, 93 S.Ct.

2880, 2897, 37 L.Ed.2d 796 (1973); *Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S.Ct. 2908, 2914, 37 L.Ed.2d 830 (1973). Thus, it is clear that "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Hoffman Estates*, 455 U.S. at 495, 102 S.Ct. at 1191. *See also Broadrick*, 413 U.S. at 608, 93 S.Ct. at 2913 ("even if the outermost boundaries of [the statute are] imprecise, any such uncertainty has little relevance here, where [taxpayers'] conduct falls squarely within the 'hard core' of the statute's proscriptions"). Inasmuch as taxpayers' actions fall squarely within Section 6702's proscriptions, *see* Part A, *supra*, they lack standing to challenge the statute on vagueness grounds.

■ But even assuming, *arguendo*, that taxpayers herein do have standing to raise the vagueness objections, we conclude that Section 6702 satisfies the requirements of due process. All due process requires is that a statutory prohibition be " '... set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest.' " *Arnett v. Kennedy*, 416 U.S. 134, 159, 94 S.Ct. 1633, 1646, 40 L.Ed.2d 15 (1974) (quoting *Civil Service Commission v. Letter Carriers, supra*, 413 U.S. at 579, 93 S.Ct. at 2897). Taxpayers complain here that Section 6702 leaves completely undefined the terms "frivolous," "self-assessment," and "substantially incorrect." We believe that said terms are commonly-understood terms in the context of the federal income tax laws so that a person exercising ordinary common sense could know what conduct is prohibited.

With respect to the term "frivolous," we agree with the *Franklet* Court to the effect that its interpretation and application will in most cases be beyond dispute. 578 F.Supp. at 1557. As a matter of common sense, a deduction (or reduction) is based on a position that is "frivolous" for purposes of Section 6702 if, as Congress defines the term, it is "clearly unallowable,"

*see* S.Rep., *supra*, at 278, *reprinted in* 1982 U.S.Code Cong. & Ad.News at 1024, or as the dictionary defines it, "ha[s] no basis in law or fact." *Webster's Third New International Dictionary* 913 (unabridged ed. 1971). Here, as in *Drefchinski v. Regan*, the plaintiffs point to other dictionary definitions of the term "frivolous," but we agree that "these variant meanings would not prevent a person of ordinary common sense from discerning the contours of the prohibition." 589 F.Supp. at 1527. The term "frivolous" does not render Section 6702 unconstitutionally vague.

Similarly, the term "self-assessment" also has a simple meaning in the conduct of income tax laws which is apparent to ordinary common sense. Read in the context of Section 6702, it is clear that the term "refers simply to the taxpayer's representations to the government on his or her return regarding taxes due." *Franklet v. United States*, 578 F.Supp. 1557. We believe that the term is sufficiently clear that a person of ordinary intelligence could understand its meaning and avoid the statutory penalty. The term "self-assessment" does not render Section 6702 unconstitutionally vague.

Finally, the term "substantially incorrect" does not render Section 6702 unconstitutionally vague in the context of a case such as the one at bar in which plaintiff taxpayers claimed from the government refunds which were much larger than the ones they were entitled to. *See, supra*, note 3 and accompanying text. In sum, taxpayers' challenge to Section 6702 on the ground of unconstitutional vagueness must fail. "[T]he general class of offenses to which the statute is directed is plainly within its terms, [and it] will not be struck down as vague, even though marginal cases could be put where doubts might arise." *United States v. Harriss*, 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954).

For the foregoing reasons we affirm the district court's dismissal of taxpayers' complaint.

*Affirmed.*